M. W. SPEARMAN, administrator, plaintiff in error, *vs.* L. M. WILSON *et al.*, executors, defendants in error.

1. It was not competent for arbitration to render an award in favor of the party, or interest, which had become the property of his son, pending the arbitration. The law which governs arbitrations demands the same freedom from all bias that applies to Judges or Courts, and the fact stated by the arbitrator, in this case, showing that, by his previous opinions expressed, his judgment had not changed by the subsequent purchase by his son, cannot make valid that which, from the fact of the purchase, when known to the arbitrator, and without notice to the other party, disqualified him to act in the case.

2. Under our laws, a Judge has no right to carry a jury into a different county from that in which they are empanneled; and any threat to do so, in case they did not find a verdict, was coercion, and deprived the jury of that free, voluntary consideration of the case invoked by the law.

3. The fact of whether a contract was entered into by Whitfield with Spearman, to devise to him certain property, by will, is one for the jury to find upon the evidence, and if they found a contract existed, equity had jurisdiction to decree damages for the breach, although it was impossible to decree specific performance in terms of such contract.

4. Under the facts of this case, if the jury found there was a contract, and a breach in the estimation of damages, it is proper to consider any advances made during the lifetime of Whitfield, distinguishing between voluntary gifts, not referential to the contract, but independent of it.

5. The altered condition of the parties, arising out of the losses to the estate of Whitfield, at his death, is a proper subject matter to be considered by the jury, in case they found a contract to have been entered into, and such breach as entitled, and Spearman to damages, under the rules of law.

Arbitrators.  Jurors.  Specific performance.  Damages. Before Judge ROBINSON.  Putnam Superior Court.  September Term, 1871.

No light would be thrown upon the opinion by a statement of the facts more in detail than appears in the opinion.

J. WINGFIELD; J. T. BOWDOIN, for plaintiff in error.

JOSHUA HILL; A. REESE, for defendants.

LOCHRANE, Chief Justice.

This was a bill filed by Spearman against the executors of Matthew Whitfield, praying specific performance of a contract alleged to have been entered into by the deceased in his lifetime, and for general relief in the premises.   To this bill the answer of the defendants were filed and interrogatories taken, and, by consent, it was ordered by the Court that the cause be referred to the arbitrament and award of Junius Wingfield and Joshua Hill, and such third arbitrator as they might agree upon, providing that the award of a majority when made "shall be returned to the Court at the next term of the same, to be made the judgment of the Court *unless good cause to the contrary be then shown.*"   The order further provided "*that the said arbitrators shall take the oath prescribed for arbitrators by the Code of this State,*" and which is found, Code, section 4173, to be " impartially to determine the matters submitted to them according to law and the justice and equity of the case, without favor or affection to either party."   After the hearing by the arbitrators, Mr. Hill and Mr. Wingfield failed to agree, and Judge Harris, the umpire, not having arrived at any conclusion took the papers with him and subsequently notified the other two arbitrators to meet him at Greensboro.   Mr. Hill did so meet him, and from high waters Mr. Wingfield alleges he was detained ; the two then proceeded, in the absence of Wingfield, to make

the award. The award was, first: That the complainant's bill be dismissed at his cost. Second. Providing for counsel fees. This award was excepted to upon various grounds which we will briefly consider. 1st. That after the cause was submitted, and before the award was made, the son of Mr. Hill bought out the interest of one of the legatees under the will of Matthew Whitfield, which was known to Mr. Hill, the arbitrator, before the award was made up, and that such fact was unknown to Spearman. 2d. Because the award was made by the two in the absence of Wingfield, he being providentially absent. 3d. Upon the merits of the case, averring a misconception of the rights of the complainant by the arbitrators, etc. The case was submitted to the jury who found in favor of the award, and a motion for a new trial was made upon several grounds, which is not necessary to detail as covering the merits; but we add the sixth ground, to-wit: "Because the jury, after being out from 11 o'clock A. M., to 5 P. M., on Saturday, the last day of Court, the Judge being ready to adjourn for the term, but from the failure of the jury to agree upon a verdict, ordered them into Court and asked them if they had agreed upon a verdict or were likely to agree, to which the foreman replied they had neither agreed or were likely to agree. The Judge thereupon said that the Court would adjourn very soon, and if they did not come in with a verdict pretty soon he would try to make arrangement for their conveyance to Greensboro, or words to that effect. The jury retired and in a few minutes brought in a verdict sustaining the award." The Court, upon the hearing, overruled the motion for a new trial upon all the grounds taken, and this is the error complained of.

1. In regard to the first objection, we are satisfied it was valid. When Mr. Hill's son became the purchaser of the interest in the estate of Whitfield, the litigation in regard to which had been submitted to him as an arbitrator, and his decision in favor of such interest, went directly to the benefit of his own son, he was an incompetent arbitrator.

It would be unjust in any case to allow any benefit to accrue to ourselves or friends from the judgment we pronounce. The purity and independence of the whole judicial system would be sapped and destroyed by the imputation of such influences. The arbitrators are judges selected by the parties. As Judges we see no middle line to stand upon, no matter how high or how low the individual, how far above or below the influence of interest or relationship. The law wisely trusts no one to decide his own case, or the case of those who stand within certain relationships. The sublime invocation of the Lord's prayer nowhere finds a more just application than with those entrusted to arbitrate or adjudge, "Lead us not into temptation." We can appreciate the statement of the arbitrator in this case that his expression of opinion was open and fixed previous to the rendition of the award and the sale to his son, and that his judgment was not changed. But the principle is clear and cannot be bent to meet exceptional cases. When this award was made, Mr. Hill was disqualified. No sane man would consent to an arbitrator whose son had bought out the interest of the opposite or adverse party. And the fact that Mr. Hill had been the attorney of Whitfield did not imply, when he was sworn as an arbitrator, that he would act as an attorney. The positions are different when a lawyer is selected as a lawyer. He may, in the fulfillment of his professional obligation, make the worse appear the better cause. It is his duty to do his best in the representation of his case. But when the lawyer is selected as an arbitrator, and he takes an oath to do justice without favor or affection, he ceases to be a lawyer to become a Judge, who has no client but conscience, and no interest but justice. We, therefore, hold in this case that Mr. Hill, when he rendered the award at Greensboro, was disqualified. Particularly would the facts of this case apply in the absence of Mr. Spearman's selected arbitrator. And while a majority, by this submission, or by the Code, may make an award, still the law contemplates the presence of all, and when not

Spearman *vs.* Wilson *et al.*

·present it ought to appear that the absence is voluntary or contumacious.

2. The Court erred in overruling the motion for a new trial, upon the ground that after the jury were brought in and answered, they had not and were not likely to agree, he stated to them if they did not bring in a verdict very soon he would make arrangements to carry them to Greensboro. This question has been decided in 31 *Georgia Reports,* 625. Under our system, from its foundation, the right of compelling jurors to agree has been limited, by the practice and usage of our Courts and the spirit of our laws, to the reasonable rules during the term of the Court which invites their consideration of the case submitted, without threats, intimidation or any species of judicial tyranny whatever. Jurors are sworn; they are an important arm of the Courts; their verdicts must be free from any involuntary influence. The Court cannot carry them about from Court to Court—he cannot take them out of the county where they are empanneled. Their duty is a laborious one; taken from their homes and business to the Court to act during the term. We see no warrant in the law to coerce them into agreement. It would be an assault upon the purity of jury trials. We recognize the great bulwark, this privilege of trial by jury, is against all sinister influences of injustice. And while Courts may detain juries and limit their action by proper and reasonable rules, so as to invoke their fullest and freest consideration of the cases submitted, still anything coercive of their free and voluntary judgment, so as to compel a verdict, would be manifestly wrong. The Judge may restrain them in their room; may limit their sustenance; may, at their request, recharge them upon the law applicable to the facts of the case; may, during the whole Court, hold them upon the case submitted, when deemed necessary. But he has no power to carry them to a distant county as jurors under guard of his bailiff, to coerce a verdict. This would be violative of the spirit of our laws. We

Spearman *vs.* Wilson *et al.*

therefore hold that the threat used by the Judge to the jury in this case was unauthorized and invokes a new trial.

3. In discussing the asserted merits of this case, we do not propose to entrench upon what belongs properly to the jury upon the hearing. We are invoked to say whether the facts in this case make out a contract; this is for the jury to determine under the evidence. We recognize the power of a party to agree for a valuable consideration, to do a certain thing agreed to be done by will and that Courts will enforce its specific performance in equity. This general principle we admit, and the authorities sustain the proposition: See 23 *Georgia Reports* 431, and 30 *Georgia Reports*, 528. But the effect of the letters relied on, coupled with the removal of the complainants to Jasper county and what transpired there, are questions depending upon facts from which the jury must find the fact of contract, if it exists. If Whitfield did make such a contract, although circumstances may have rendered its execution by specific performance unattainable, yet it does not follow, as held by the arbitrators in this case, that a bill for specific performance should be dismissed. Such is not the law, for the reason that, under our law, where equity has the jurisdiction for specific performance, and the character of the case renders the performance impossible and the contract is sustained by proof, the jury may decree damages for the breach of the contract.

4. And, under the facts of this case, we are of opinion that if the jury believed that there was a contract under the rules of law sustained by the evidence, then it would be their duty to see if there was a breach, and upon what legal relations it stood, and if the question of damages were arrived at by their previous conclusions, then it would be for them to consider, in the estimation of such damages, the amounts advanced by Whitfield in the progress of the services rendered, if any were contracted for, to Spearman on account or compensation thereof, discriminating between voluntary gifts not referential to the contract, but apart from and indepen-

dent of it. As this case goes back for a new trial, and the effect of the judgment is to set aside the award, we intend only to foreshadow the line rather than mark the track for the consideration of the jury.

5. We do not concur with the views of the arbitrators in the opinion given for their *award,* but we do not deem it necessary to discuss what is argued as their palpable mistake of the law ; as the award itself must be set aside. The bill presents an equitable case for consideration, and invokes the verdict of a jury upon the proof, in addition to what has been stated upon the subject. 1st. As to the fact of contract. 2d. Its breach. 3d. Its damages. We remark that the condition of Mr. Whitfield's estate at the time, and the present condition of his estate, by alteration of circumstance under the peculiar facts of this case, ought to be weighed in finding a verdict by the jury.

Judgment reversed.