## PHYSIOC *vs.* SHEA, and *vice versa.*

1. The old idea of starving juries to coerce a verdict has passed away, and the judge is empowered to furnish refreshments at the expense of the county. It was, therefore, error for the court to state, in effect, after the jury had been out all night without supper or breakfast, that they would not be allowed their meals except at their own expense. This operated as a threat to starve such as had no money into finding a verdict, and resulted in a speedy finding.
2. A new trial should have been granted also because the verdict was contrary to law and the evidence.
(*a.*) If a foreman or "boss" in a tailor shop went on a spree, neglected his business and carried other employes with him, his employer might have discharged or reprimanded him, and neither would give him the right to recover against such employer.
(*b.*) If necessary, the pleadings may be amended so as to set out fully the issues between the parties.

December 1, 1885.

Practice in Superior Court. Jury and Jurors. Verdict. Master and Servant. Actions. Before Judge SIMMONS. Bibb Superior Court. April Term, 1885.

Physioc brought suit against Shea for the breach of a written contract of employment as foreman of a tailor shop for a term of two years. It was alleged that, at the end of seven months, the defendant discharged him without any legal reason. The defendant pleaded the general

issue; that the plaintiff first broke the contract and failed and refused to comply with its terms, thereby relieving the defendant; and that the plaintiff had obtained other employment equally remunerative, and was not damaged.

On the trial, the evidence for the plaintiff was, in brief, as follows: He was employed on April 17, 1882, for two years as foreman of the tailor shop of the defendant, at $20 per week. He worked for the defendant for seven months. It was a part of the duty of the foreman to keep down dissensions and preserve peace in the shop. The plaintiff had a difficulty with a workman named Rapp, which he reported to the defendant and demanded or asked for the discharge of that workman. The plaintiff testified that he did not tell the defendant that he would not work any more if Rapp was not discharged; that he did not remember whether he made such statement to other workmen or not. He went to see the plaintiff several times during the day, and other workmen went with him. He did not urge them to go or organize a strike, but they went of their own accord. He lost one day from work; then went back to work, and so continued for about eight days. At the end of that time, the work he had on hand was finished, and he went to the defendant for more, as was usual. During that time the defendant treated him with contempt and did not notice him. When he asked for more work, at first the defendant paid no attention to him, but afterwards told him to go away. The plaintiff went back up stairs to the workshop, but returned again in about half an hour and again asked for work. The defendant said, "I have got enough of you. You leave my store." The defendant called two employés, who were present, to witness his discharge, and left. He obtained other employment for about three months, which netted him about $50 or $60 per month. He then set up a shop of his own, and had made a little more since then.

The evidence for the defendant was, in brief, as follows: The plaintiff made complaints about several of the em-

ployés, and was on bad terms with them.    He had a fight with Rapp, and demanded his discharge.    He instigated a strike among the employés to force this discharge, and five of them went with him and called on the defendant    The plaintiff stated that he would not work any more unless Rapp was discharged.    They were drinking.    The defendant urged them to go back to work, and subsequently all did so except the plaintiff.    The strike lasted from one to three days, according to the testimony of different witnesses. Late in the afternoon, after dark, and about time for closing the store, the plaintiff came back and said he wanted work.    The defendant told him to go up stairs; that it was too late then.    The next morning, the defendant sent up work for him, but found him gone.    The defendant denied discharging the plaintiff, but said he needed his services. On cross-examination, he said he had since supplied his place with another, at $16 per week.

The jury found for the plaintiff $175.00.    The defendant moved for a new trial on the following grounds :

(1) to (4.)  Because the verdict was contrary to law, evidence, the weight of the evidence and the principles of justice and equity.

(5), (6.)  Because the verdict was rendered under circumstances which showed that it was not the result of deliberation on the part of the jury, but was induced by the fear of being kept in confinement, such circumstances being as follows : The jury retired at 4:15 P. M. on Wednesday, April 29, and were left in their room until after the court reassembled on the next morning at 9 A. M., without food.    Shortly after nine o'clock, they were brought into court by direction of the judge presiding, who asked them if they had agreed upon a verdict.    The foreman replied that they had not, and that they could not agree.    The judge then told them that he would give them further time to deliberate; that it was not his practice to furnish meals at the expense of the county in any civil case, and he would not do so in this case, but would allow them to have

their meals furnished them regularly at their own expense; that, as they would have to pay for them themselves, he would allow them to get them for themselves wherever they pleased, but they must be kept together under charge of the bailiff; that they might go with the bailiff to any place they might select to get their meals; and that they should be made as comfortable as possible while they had the case under consideration. The jury then returned to their room, and in from five to ten minutes came into court with their verdict.

(7.) Because the court refused to charge as follows: "It is not sufficient to justify the jury in finding that defendant, Shea, discharged plaintiff, Physioc, to find that Shea used language from which Physioc inferred an intention to discharge him. It must appear that such was Shea's intention; and if Shea used language which was uncertain in its meaning, which might be construed to mean or not to mean such discharge, it was Physioc's duty to inquire and ascertain exactly what he did mean, before abandoning the contract on his part. [The court certified that he gave part of this charge, but omitted part and modified it, as shown by his entire charge.]

The motion was granted on two grounds (the order in the record says the third and sixth; in the bill of exceptions, and in the cross-bill *pendente lite*, filed by the defendant. it is stated as the fifth and sixth.) The plaintiff excepted to the grant of the motion, and the defendant excepted to the failure to grant it on the remaining grounds.

SAM. H. JEMISON, for plaintiff.

GUSTIN & HALL, for defendant

JACKSON, Chief Justice.

1. The new trial was properly granted on the ground that the court erred in his remarks to the jury in regard to allowing them their meals only at their own expense, after

they had been out all night without supper or breakfast. It operated as a threat to starve such as had no money into finding a verdict, for in ten minutes, after being hung all night, they agreed on a verdict. The old idea of starving juries to coerce a verdict has past away. Our own Code explodes it. Code, §3947. The same section also empowers the judge to furnish refreshment at the expense of the county. 37 *Ga.*, 195.

2. It should have been granted, because the verdict is contrary to the law and the evidence. Shea might well have discharged Physioc, who seems to have been off on a spree for from one to several days, according to the differing recollection of different witnesses as to the time he re mained off on the frolic, yet off on a spree according to all, thus neglecting his business as foreman or boss over the other tailors employed by Shea, and taking some of them with him, according to some testimony in the record. If the law would have justified him in discharging Physioc, and Physioc could not have complained of that, can he complain when he only reprimanded him? Surely not. Therefore, whether he discharged him or spoke harshly to him only, Physioc ought not to recover. It may be that the pleadings did not permit the consideration of his justification in discharging him, if he did. Yet, as the new trial should and will be granted any way on the first ground, the pleadings can be amended for the new trial, if deemed advisable. At all events, under the facts, we are clear that a new trial should have been granted as well on the 1st, 2d, 3d and 4th grounds as on the 5th or 6th. From the bill of exceptions, it seems to have been granted on the 5th and 6th only, which involve the same point, while in the record it is granted on the 3d and 6th, which 3d ground is that the verdict is against the weight of evidence and without evidence to support it. Ordinarily the record would prevail, but as the interlocutory bill of exceptions, which is filed by the defendant in error to the main bill of exceptions, also recites that it was granted on

the 5th and 6th, and as this is part of the record, we assume that the truth is that way.

The judgment is affirmed because the presiding judge erred as set out in the 5th and 6th grounds of error in the motion, and also because, in our judgment, the verdict is not supported sufficiently by the evidence, and is therefore against law and equity. There was no error, therefore, in granting the new trial.

Judgment affirmed.