# Court of Appeals.

June 7, 1898.

## PEOPLE v. FRANK N. SHELDON.

1. TRIAL—JURY—FORCED VERDICT.

The question how long a court may keep a jury together is one that rests in its sound discretion.

2. TRIAL—JURY—COMPULSION.

An attempt to drive the members of a jury into an agreement is beyond the power of the court, and an obvious attempt to effect such a result demands a new trial.

3. TRIAL—JURY—COMPULSION.

No juror should be induced to agree to a verdict by fear that a failure to so agree would be regarded by the public as reflecting upon either his intelligence or his integrity

4. SAME.

A verdict so obtained ought not to be allowed to stand in any case, and least of all, in one involving a human life.

APPEAL from a judgment of the supreme court in Cayuga county upon a verdict convicting the defendant of the crime of murder in the first degree.

The defendant, Frank N. Sheldon, was on the 9th day of October, 1896, indicted by the grand jury of Cayuga county for the crime of murder in the first degree, charged with the killing of his wife, Eva M. Sheldon; on the 12th day of October, 1896, he was arraigned on said indictment and pleaded not guilty. On the 25th day of January, 1897, at a trial term of the supreme court held in and for the said county, the indictment was moved for trial. The trial lasted for seven weeks, ending on the 15th day of March.

A great number of witnesses (119 in all) were examined. The evidence against the accused was largely circumstantial. The defense insisted that the deceased came to her death by suicide, and considerable evidence pointing in that direction was given during the progress of the trial. It was generally supposed at first that the deceased had taken her own life, as when the body was discovered in a closet of the house occu-

pied by her and the prisoner, a pistol was lying beside it, and not for some time after the burial was the defendant accused of the crime of which he was subsequently convicted. In fact there were two disinterments of the body, considerable time elapsing between them, before the idea of murder became prevalent and the prisoner charged with the crime.

On March 11th the case was finally submitted to the jury, who immediately retired to deliberate upon their verdict. Three times at their request, the jury were brought into court for instructions. After being out all of one night and the greater part of one day, they announced that they had not agreed upon a verdict. The judge ordered the jury to be sent out again for further deliberation. They returned into court the second time, after having been out two nights, all of one day and part of the second day, and reported in a writing signed by the foreman that they were unable to agree upon a verdict, and that it was impossible for them to do so. The jury were again sent back to the jury room by the court, after receiving certain instructions, and remained there until 3.20 o'clock of that day (it being Saturday), when they were sent for by the court, who, after giving them further instructions and directing certain provision to be made for their convenience and comfort, ordered them to be taken back for further deliberation.

They remained out from that time, two nights and one day, until Monday morning when they returned into court and announced a verdict of guilty as charged in the indictment. The jury were out altogether four nights and about four days. During all this time they had been provided with no sleeping accommodations whatever, confined for two nights and almost two days in the narrow quarters of a jury room and the rest of the time in the court room which had been set aside for that purpose. What followed each time, as the jury returned into court, will fully appear by the following synopsis taken from the record.

Jury went out Thursday March 11th, 1897, at 8.30 P. M. 11.30 A. M. Friday, jury came into court and asked two questions as to the evidence, which were answered by the court from the minutes of stenographer, folios 11202 to 11240, without ob-

jection. 3:25 P. M. jury again came into court and announced they had not agreed upon a verdict. By the Court: "Well, gentlemen, you must make an effort to agree. This case has involved immense labor; a great deal of time, as you know, has been given to it, and, from all the evidence that has been produced, it would seem that the case is susceptible of a conclusion. The only way of reaching a conclusion is through the verdict of the jury. There is no reason why these twelve men are not as capable of understanding this case and coming to a conclusion as any other twelve that could be gotten together. It is a case of too much importance, that has entailed too much labor, to permit a jury to separate without the utmost effort to agree. Differences that exist amongst you as to the evidence must be further investigated. Any question of law the court will be glad to explain to you. It is for the interests of all con cerned and public justice that there should be a decision of this case so that the questions in it shall be put at rest. *I cannot hear of a disagreement of this jury. You must retire, gentlemen.*"

The jury again retired at 3:30 P. M., and at 5:30 P. M. sent a communication to the court asking for further information. Instructions were given and questions of jury answered by reading from the stenographer's minutes, folios 11245 to 11281, without objection. Jury then retired. Saturday morning, March 13, 1897: The jury came into court by the order of Justice DUN-WELL at 12:45 P. M. and presented a written communication to the court, Mr. Drummond having previously waived his presence in court, which read as follows: "Judge DUNWELL: Dear Sir—The probability or even possibility of this jury ever agreeing is impossible in my opinion. George J. Holden, Foreman."

By the Court: "The order will be that you be conducted to your hotel and that you be brought back for further deliberation. The counsel for the defendant is not here, and later I will have something further to say to you with reference to your present communication. *I have made my own arrangements so as to be back at your call both for to-day and for some time in the future so that this case may be fully disposed of if there*

*is a possibility of it,* and I will have something further to say on this subject later in the day when the defendant's counsel can be present."

At 3:20 P. M. the jury again returned to the court and were addressed by the court as follows: "Gentlemen, I have been giving consideration to the note that you addressed to the court this morning, in which you stated your doubts as to your ability to agrèe upon a verdict in this case. I very much regret this supposition of yours, *but I by no means despair.* This case has involved immense labor, enormous expense has been entailed, evidence has been gathered and brought before you from every direction, evidence bearing directly upon the issues in this case, and some of it remotely upon the issues; all, everything. that could be suggested that might throw light upon the question submitted to you, has been brought before you, and is in your position. Now, the truth of this case lies within the compass of that evidence. *Mrs. Sheldon died by violence.* How that came about and whether the defendant is guilty or innocent is something that must be told by the evidence that has been presented to you. *I don't know that you fully appreciate the gravity and importance to this community and to the state that a decision shall be reached* in this matter and that this important question shall be settled as to whether the defendant is guilty or innocent. This case has occupied nearly seven weeks, and to say now, at the end of all that time, at the end of all this labor and expense, that the question is no better off than it was when started *is almost to confess incompetency in this matter.* Of course I have no means of knowing, and I don't desire to know unless it is something that you desire to bring before the court, the reasons why this state of affairs exists in your body. I hope it is nothing like pride of opinion ; I hope it is nothing like having once taken a position in this case, that, therefore, you must say it is unalterable; that it is not susceptible of change by argument, and by a review of the evidence in the case, because such considerations as those would be most unworthy to divide a jury upon so important a question. Engaged as I am in the administration of, or attempt to administer, public justice in this district, *I have laid aside my other engagements so that this case*

*can be attended to, because I appreciate the importance of it, and I would like to enforce upon you an appreciation of the importance of settling this question. It has got to be settled.* When an affair of this kind has occurred it has got to be tried, it has got to be investigated, and the interests of public justice will not stop short of going to the very bottom of it and discovering what the truth is, regardless of time and expense. I do not say these things, gentlemen, in a fault-finding way ; I desire to say them to you with the idea of urging upon you and of bringing to your minds an appreciation of the great importance of this matter, and of settling it and deciding it. I appreciate somewhat your position. I don't say this with any unkindness. I know that your labors in this matter have been tedious and that they are wearisome, and I appreciate the length of time that you have been out, and you must not think that I am forgetful of these things ; but there must be a supreme effort made on your part to harmonize differences, and, therefore, *I am going to insist that you begin at the* very outset of the case, from the very beginning, and go over it again, looking at it from every possible point of view, so that there shall not be a failure of justice in this case. I know that your jury room is a narrow place, and that you are a good deal confined there, and for that reason *I have arranged with the sheriff that you shall occupy this room from now on to the completion of your labors. Of course, I don't know how long it will take, and, therefore, I have arranged with the sheriff* that you shall have more comfortable quarters, so that this room will be cleared shortly after you have retired, and the officers will remain down stairs in the sheriff's office and you will be given this room, giving you a better opportunity to circulate about, and making your position as comfortable as possible under the circumstances."

At 7:35 P. M. the court ordered that the jury be taken to supper and returned to their room for further deliberation. * * * The court also entered an order that the jury should be conducted to their meals at the usual hours, *to-morrow, Sunday, and including Monday morning.*

Defendant's counsel objected and excepted to the remarks and instructions given to the jury, at 3:20 P. M., on March 13th,

1897, and to each and every part thereof    Defendant particularly and specifically objects and excepts to folios 11305 to and including folio 11317, and also asks that the written communication of the jury to the court be made a part of the record.

Monday morning, March 15th, 1897.    At 7:30 the jury sent word to Justice DUNWELL that they were ready to report, and they were accordingly brought into court at 8:30 A. M., the roll called by the clerk and the question put: "Gentlemen of the jury, have you agreed upon a verdict?"    By Foreman Holden: "We have.    We find the prisoner guilty as charged in the indictment."    By the Court: "You say you find the prisoner guilty, as charged in the indictment, of murder in the first degree?"    By Foreman Holden "We do."    The jury were thereupon polled and each answered, "Guilty." *  *  *

Defendant's counsel moved arrest of judgment under section 467 of the Code of Criminal Procedure, and also on each and every ground as provided by the Code of Criminal Procedure in reference to an arrest of judgment.    Defendant's counsel also moved for a new trial in the case under section 465 of the Code of Criminal Procedure, and upon each and every ground stated in section 465, and especially subdivisions 4, 5 and 6 of that section.    Both motions were denied and exceptions taken by defendant.

Robert L. Drummond, for appellant.

George W. Nellis, for respondent.

PARKER, Ch. J.—The question before this court is not how long may a court keep a jury together, for that is a matter resting in the sound discretion of the trial court.    Nor is the question whether a jury should be compelled to stay together more than one night without a bed, or at least a cot to lie on, for that too is a matter resting in discretion.    It seems a wiser exercise of that discretion, however, to provide sleeping accommodations for the jury, after the first night at least.    This can be readily done in most hotels without interference with the requirement to keep the jury together.    But while these questions are not

before the court, the facts which suggest them are, and together with other facts, they command an answer to the query, may there be coercion of a jury in a capital case ? If this question be answered in the negative there follows the further inquiry, was there coercion in this case ?

By the ancient common law jurors were kept together as prisoners of the court until they had agreed upon their verdict. Thompson & Merriam on Juries, § 310. It was regarded not only proper, but requisite, that they should be coerced to an agreement upon a verdict. Profatt Jury Trial, § 475.

"A jury, sworn and out in a case of life or member, cannot be discharged by the court or any other, but they ought to give a verdict." Coke Litt. 227b. Blackstone Com. (p. 375) says : "The jury, after the proofs are summed up, unless the case be very clear, withdraw from the bar to consider their verdict ; and, in order to avoid intemperance and causeless delay, are to be kept without meat, drink, fire, or candle, unless by permission of the judge, till they are all unanimously agreed. * * * And it has been held that, if the jurors do not agree in their verdict before the judges are about to leave the town, the judges are not bound to wait for them, but may carry them to town in a cart."

In the Doctor and Student (1518), at p. 271, it is said : "I take not the law of the realm to be that the jury, after they be sworn, may not eat nor drink till they be agreed of the verdict but truth it is there is a maxim and an old custom in the law, that they shall not eat nor drink after they be sworn, till they have given their verdict, without the assent and license of the justice. * * * And if they will in no wise agree. I think that the justices may set such order in the matter as shall seem to them by their discretion to stand with reason and conscience, by awarding a new inquest, and by setting fine upon them that they shall find in default, or otherwise as they shall think best in their discretion ; like as they may do if one of the jury die before verdict, or if any other like casualties fall in that behalf."

Mr. Emlyn, in his preface to the second edition of the State Trials, printed in 1730, says : "The law requires that the twelve men, of which the jury consists, shall all agree before they give

in a verdict; if they don't, they must undergo a greater punish-
ment than the criminal himself; they are to be confined in one
room without meat. " etc., " till they are starv'd.   It would be
pretty hard to assign any tolerable reason for this usage; if it
has seldom or never happen'd, I'm afraid it has sometimes been
prevented only by the unjust compliance of some of the jurors
against their own consciences.   *   *   *   To what end, there-
fore, are they to be restrained in this manner?   It may, indeed,
force them to an outward seeming agreement against the dictates
of their own consciences, but can never be a means of informing
their judgment or convincing their understanding.   *   *   *
Why must the jurors be compelled to an agreement one way or
the other ?   After all, a forced agreement is no better than
none.   If the consent of him who stands out against the rest be
of any regard, it ought to be free; if of none, then why can't a
verdict be given without it ? "

The inconsistency of insisting that, every one of twelve men
must agree before a verdict can be rendered, and at the same
time justifying a court in coercing one or more jurors into an
agreement with their fellows, received early attention by the
courts of this state.

In People v. Olcott, 2 Johnson's Cases, 301, the defendant was
tried under an indictment for conspiracy to defraud, and, the
jury being unable to agree, the court, against the consent of the
defendant, ordered a juror withdrawn and the jury discharged.
Mr. Justice Kent, in an opinion reviewing prior cases at length,
paid his respects (at page 309) to the rule formerly existing of
compelling an agreement of the jury.  He said : " The doctrine
of compelling a jury to unanimity by the pains of hunger and
fatigue, so that the verdict in fact be founded not on temperate
discussion and clear conviction, but on strength of body, is a
monstrous doctrine, that does not stand with conscience, but is
altogether repugnant to a sense of humanity and justice.   A
verdict of acquittal or conviction obtained under such circum-
stances can never receive the sanction of public opinion.   And
the practice of former times, of sending the jury in carts from
one *assize* to another, is properly controlled by the improved
manners and sentiments of the present day. "

In People v. Goodwin, 18 Johns, 187, the defendant was in dicted for manslaughter; the jury being unable to agree before the last moment the court would sit, they were discharged. The question arose whether defendant could be again put upon his trial on the indictment. In writing the opinion of the court SPENCER, Ch. J., said: "In the case of People v. Olcott all the authorities then extant upon the power of the court to discharge a jury in criminal cases, and the consequences of such discharge, were very ably and elaborately examined by Mr. Justice KENT, and it would be an unpardonable waste of time to enter upon a re-examination of them." The chief judge quotes largely from Justice KENT's opinion, and says: "The learned judge inveighs, with force and eloquence, against the monstrous doctrine of compelling a jury to unanimity by the pains of hunger and fatigue, so that a verdict is not founded on temperate discussion, but on strength of body. Although the case of People v. Olcott was a case of misdemeanor, the reasoning is, in my judgment, entirely applicable to cases of felony; and, although the opinion was confined to the case under consideration, a perusal of it will show that it embraces every possible case of a trial for crimes. "

Other comparatively early criminal cases in which the same question was presented and passed on were People v. Ward, 1 Wheeler Cr. Cases, 469; Grant v. People, 4 Parker's Crim. R. 527; People v. Green, 13 Wend. 55; *U. S.* v. *Perez*, 9 Wheaton 579.

In *Green* v. *Telfair*, 11 How. Pr. 260, a motion was made to set aside a verdict on affidavits. The judge said to the jury in substance, this case has excited considerable feeling; the nature of jury trials implies concessions and compromise; no juror should control result, or otherwise the verdict would be that of one man, not that of twelve; that for five years he had discharged but one jury that had failed to agree, and he should send them out again, and hoped they would agree. One of the jurors said he supposed (it being Saturday afternoon) their duties would be at an end, and they would be discharged at twelve o'clock, to which the judge replied that this was not so; that he was authorized to receive the verdict on Sunday,

and besides it was his intention to go to Albany by the next train, and if they did not agree before he left he would return on Monday and receive their verdict. Jury retired, remained absent about half an hour, returned into court and rendered a verdict for plaintiff.

Mr. Justice HARRIS, before whom the motion was made to set aside the verdict on the ground of coercion, said in the course of his opinion : " An attempt to influence the jury by referring to the time they are to be kept together, or the inconvenience to which they are to be subjected, in case they are so pertinacious as to adhere to their individual opinions, and thus continue to disagree, cannot be justified. A judge has no right to threaten or intimidate a jury in order to affect their deliberations. I think he has no right to even allude to his own purposes as to the length of time they are to be kept together. There should be nothing in his intercourse with the jury having the least appearance of duress or coercion. * * * That, should they continue to disagree, they are not to be exposed to unreasonable inconvenience, nor to receive the animadversion of the court."

In Slater v. Mead, 53 How. Pr. 59, the judge said to the jury : " You must agree upon a verdict ; I cannot discharge you until you agree upon a verdict." The jury retired, and soon returned and rendered their verdict of no cause of action. Verdict was set aside on motion at special term, the opinion citing with approval the remarks of Mr. Justice HARRIS in Green v. Telfair, *supra*."

In Ingersoll v. The Town of Lansing, 51 Hun, 108, the court made no provision for discharging the jury in the absence of the presiding justice from the county, unless they agreed, which compelled them to bring in a verdict or remain in confinement for four days without aid, protection or even the presence of the court. On appeal, this was held to constitute coercion, and, therefore, that the trial court erred in refusing to set aside the verdict. In the course of the opinion, which was written by Mr. Justice FOLLETT, the opinion in Green v. Telfair is cited with approval, and also Pierce v. Pierce, 38 Mich. 412. In the latter case the jury retired on Tuesday P. M. Wednesday P. M. officer in-

formed the judge that they could not agree. Thereupon the judge directed the officer to inform them "The judge does not believe it yet, and you might say to them that it is essential that they agree to-night, as I am going, and I won't be back until day after to-morrow, and they might not get discharged until I come back, as Judge COOLIDGE is going to be here." The verdict was returned within an hour. It was held that the verdict should be regarded as coerced, the court saying : "Every attempt to drive men into an agreement which they would not have reached freely is a perversion of justice. The one may be right as well as the eleven, and if right may be able to persuade them. * * * And it is very possible, at least, that a message of this kind given would be regarded by the outstanding juror as a somewhat strong intimation of the judge's opinion of the plainness of the case and the impropriety of holding out."

In Physive v. Shea, 75 Ga. 466, a new trial was granted, where a verdict was rendered shortly after the judge told the jury (which had been out all night) that they could have breakfast at their own expense, they having had no supper.

In Chesapeake, O. & S. W. R. R. Co. v. Barlow, 86 Tenn. 537, the jury reported inability to agree. The trial judge said : "This is too common, and you ought to agree ; " that he would not discharge them, but should keep them together for the remaining three weeks of the term unless they agreed. They agreed next day. The verdict was set aside.

In State v. Bybee, 17 Kansas, 462, the court said to the jury that they ought, by compromise and surrender of individual opinion, to agree, and that failure to do so would be an imputation on court and jury. In an opinion written by Judge BREWER the court presented its reasons for reversing the judgment in part, that while the court might call the attention of the jury to many matters that rendered an agreement desirable, such as time already taken, improbability of securing additional testimony, the general public benefit in a speedy close of a litigation, the question of expense to parties and the public, yet no juror should be influenced to a verdict by fear that failure to do so would be regarded by the public as reflecting upon either his intelligence or his integrity. "Personal considerations should

never be permitted to influence his conclusion, and the thought of them should never be presented to him as a motive of action."

That was a criminal case, and it may be said, in passing, that the language used by the trial judge to the jury is very much like that used on one occasion by the judge in the case at bar. The intelligence of the jury was not more sharply reflected upon in that case than in this, for the trial justice said: " This case has occupied nearly seven weeks, and to say now, at the end of all that time, at the end of all this labor and expenses, that the question is no better off than it was when started, *is almost to confess incompetency in this* matter."

In Hancock v. Elam, 3 Baxt. Tenn. 33, the judge ordered the jury locked up until they should agree, not allowing them to have dinner. Held, error.

Spearman v. Wilson, 44 Ga. 473, held: " The court erred in overruling the motion for a new trial, upon the ground that, after the jury was brought in and answered they had not and were not likely to agree, he stated to them that if they did not bring in a verdict very soon, he would make arrangements to carry them to Greensboro. This question was decided in 31 Geo. 625."

In 16 Am. & Eng. Enc. of Law, 522, the rule is said to be that " Language on the part of the court, the obvious tendency of which is to coerce an agreement on the part of the jury, affords grounds for a new trial. To insist too strenuously upon the necessity of an agreement may have such effect."

Terre Haute & Ind. R. R. Co. v. Jackson, 81 Ind. 19, 24, was an appeal from a decision overruling a motion for a new trial. Judgment was reversed and a new trial granted, upon the ground of coercion. After the jury had retired and been out nine hours, the trial court, without consent of the appellant, " caused the jury. to be informed through the bailiff having them in charge that, if they did not agree upon a verdict, the court would keep them until Saturday night, a period of four days, to which action of the court the defendant at the proper time, as soon as her attorneys learned of such action, objected and excepted."

" The action of the court cannot be justified. It constituted as it must have intended it should, a kind of coercion upon the jury, which was inconsistent with their proper independence. * * * A plain error was committed. Its plain tendency was to influence the jury. "

Berry v. People, 1 N. Y. Cr. R. 43, 47, reported in memorandum (77 N. Y. 588), is not at all in conflict with the trend of all recent authority upon this question. In that case the jury, after being charged, retired for deliberation and upon returning to the court asked for further instructions, and then announced their inability to agree upon a verdict. The recorder, addressing the jury, said : " I would discharge you, but under my sense of duty I cannot. After a few days the case has been presented to you, throughly argued and tried, witnesses were examined and cross-examined. I don't care what you find, guilty or not guilty, it is perfectly immaterial to me. But I say it is my duty if you cannot agree, that I shall lock you up for the night. That is a most ungrateful thing to do to any jury. As I told you on Friday night, I didn't want you detained from your families, and I do not now. If you cannot agree I shall order an office to take you in charge. I will give you fifteen minutes and see if you can arrive at a conclusion."

But for the expression of the trial judge, " I shall lock you up for the night," his remarks would have presented no ground for criticism. This court was of the opinion that the trial judge did not intend to coerce the jury, that he sought merely to convey the idea that they would have to remain over night at the court. This court said in its *per curiam* opinion : " The alleged threat to lock up jurors if they failed to agree, was, we think, only intended as a statement that the jury would have to remain over night, as the court would adjourn. Nothing like a threat of imprisonment or punishment could have been intended." The decision of the court, therefore, was that there had been no attempt at coercion, the language complained of not being susceptible of a construction that would give it that effect with the jury, and not that a judgment would be allowed to stand either where the trial court had attempted to coerce the jury, or the language used by him was of such a character that it probably

had that effect.    Phœnix Ins. Co. v. Moog, 81 Ala. 335, and Taylor v. Jones, 2 Head, Tenn., 565, are in line with cases cited.

Reference has now been made to nearly all the cases which I have been able to find, of comparatively recent date, and they establish that the old rule permitting coercion of a jury in order to secure a verdict has been swept away; that, under our present method, the independence of a juror is respected.    An attempt to drive the members of a jury into an agreement is beyond the power of the court, and an obvious effort to effect such a result demands a new trial.

In this case we can well understand the anxiety of the learned judge, who presided at the trial, to have it ended by a verdict of a jury.    The trial has lasted nearly seven weeks; it had been a severe strain upon the jury to be kept together all that time; the expense had been exceedingly great for so small a county, and to have all this inconvenience, labor and expense borne for nothing seemed a most unfortunate result, and one to be avoided if possible.    But in the attempt to avoid it the learned judge, as we think, after a very careful consideration of the subject, fell into error, and as a result, very likely coerced some members of the jury into an agreement with their fellow-members against their own personal convictions.

Some of the grounds upon which this conclusion rests will now be given.

At 8:30 P. M. of the 11th day of March, 1897, the jury retired to consider a case, the trial of which had consumed nearly seven weeks, during all of which time they had been kept together. All of that night and until 11:30 A. M. of the next day, the jury were presumably engaged in discussing the evidence, but at the hour last named they came into court and asked two questions about evidence.    The information asked for was furnished by reading a portion of the stenographer's minutes.    At 3:25 P. M. of the same day, the jury came into court and announced that they had not agreed upon a verdict.    The court then addressed the jury upon the importance of a decision of the question sub-mitted to them, concluding as follows: "It is for the interests of all concerned and public justice that there should be a decision

of this case, so that the question shall be put at rest. I cannot hear of a disagreement of this jury. You must retire, gentlemen. "

The jury at once retired, and two hours later asked for further instructions, which were furnished by reading from the stenographer's minutes. The next day at 12:45 P. M. the jury presented to the court a written communication, which read as follows :

"The probability or even possibility of this jury ever agreeing is impossible, in my opinion.

"(Signed.)      GEO. J. HOLDEN, *Foreman.*"

For forty hours, covering two entire nights, this jury had been engaged in the consideration of the testimony in a small room, and now for the first reported their deliberate judgment to be that an agreement was impossible. The court responded to this communication as follows : " The order will be that you be conducted to your hotel, and that you be brought back for further deliberation. * * * I have made my own arrangements so as to be back at your call, *both for to-day and for some time in the future,* so that this case may be fully disposed of, if there is a possibility for it. * * *."

Language more apt to convey to a jury that the hardships of the past forty hours were to be continued for a considerable time in the future, cannot easily be imagined. On their return the court addressed them at length, saying among other things : " I don't know that you fully appreciate the gravity and importance to this community and to the state, that a decision should be reached in this matter, and that this important question shall be settled whether the defendant is guilty or innocent. This case has occupied nearly seven weeks, and to say now at the end of all that time, at the end of all this labor and expense, that the question is no better off than it was when it started is almost to confess incompetency in this matter * * *."

We suspended quoting from the remarks of the court long enough to again call attention to State v. Bybee, *supra,* in which the court reversed a judgment of conviction because the trial

court in urging the jury to agree said, "that failure to do so would be an imputation on court and jury."

In the opinion of the court written by judge, now Mr. Justice BREWER, it was said: "No juror should be induced to agree to a verdict by a fear that a failure to so agree would be regarded by the public as reflecting upon either his intelligence or his integrity. Personal consideration should never be permitted to influence his conclusions, and the thought of them should never be presented to him as a motive for action."

The position taken by that court meets with our approval, and it is alike applicable to the comment of the trial court in this case that a failure to agree "is almost to confess incompetency in this matter."

Taking up again the address of the court to the jury, who had solemnly announced that an agreement was impossible, we quote: "I have laid aside my other engagements so that this case can be attended to, because I appreciate the importance of it, and I would like to enforce upon you an appreciation of the importance of settling this question; it has got to be settled." Later on, but in this same address, the court said: "I know that your room is a narrow place and that you are a good deal confined there, and for that reason I have arranged with the sheriff that you shall occupy this room from now on until the completion of your labors. Of course I don't know how long it will take * * *."

The address was followed by an order entered on the minutes of the court "that the jury should be conducted to their meals at the usual hours to-morrow, Sunday and including Monday morning." Monday morning came and the jury sent word to the court that they had agreed; they had been out for about eighty-four hours without beds or cots; forty of those hours they had been confined in a small room. From the remarks of the court, and the treatment they had received, they had every reason to believe that a still longer confinement on chairs and hard benches was in store for them, a physical strain such as only strong men could stand. If one or more members of the jury surrendered their convictions to put an end to the punishment they were undergoing, and with an indefinite continuance

of which they were all threatened, it is not to be wondered at. Only very strong characters could have longer resisted the importunities of associates and the appeal of their own exhausted bodies for relief from the strain to which they had been so long subjected.

Enough has been said to call attention to some of the reasons which have led us to the conclusion that the agreement of this jury should be regarded as coerced. A verdict thus obtained ought not to be allowed to stand in any case, and least of all, in one involving a human life.

The judgment should be reversed and a new trial granted.

All concur.

Judgment reversed, etc.