## BENJAMIN DOUGLASS, Plaintiff in Error,

### *vs.*

## THE STATE OF WISCONSIN, Defendant in Error.

ERROR TO THE JEFFERSON CIRCUIT COURT.

A mill dam becomes a nuisance when it causes the water to overflow the banks of the stream and the surrounding country, and to become stagnant, whereby the air along the highways, and around the dwellings, becomes noxious and unwhole- some, and the health of the community is sensibly impaired.

A mill dam across a stream not navigable is not necessarily a nuisance, but only becomes such when it gives rise to those deleterious causes or agencies which impair the health or comfort of the neighborhood.

Whether or not the dam produces the mischievous consequences which make it a nuisance, is a question of fact for the jury.

It is no defence to an indictment for nuisance, that the particular structure com- plained of is not more injurious to the public health or enjoyment of life, than is common to such structures.

It is no defence to an indictment for maintaining a nuisance, by means of a mill dam, that it was erected before any inhabitants had settled along the margin of the stream flowed by it.

The provision of our statute, that a jury having returned into court and reported the second time that they are unable to agree, shall not be sent out again with- out their consent, unless they ask further instruction in the law, was designed for the protection of the jury. It is not error for the judge in such case to ask them whether their disagreement is of law or of fact, nor to send them out again unless they object.

Comments of the judge on the nature and effect of the evidence, importance of a verdict, the necessity of agreement, &c., considered.

THE plaintiff in error was indicted in the Jefferson Circuit Court, for a nuisance occasioned by the erection and mainten- ance of a mill dam, by which the surrounding lands were over- flowed and the health of the community impaired, &c., &c.

The case has been before the court once before (*See* 3 *Wis. Rep.* 820), on objections taken to a former trial, when the former conviction was set aside, and a *venire de novo* awarded. It is now presented again for review upon exceptions taken to the ruling of the Circuit Court on the second trial. No question is made in regard to the form or substance of the indictment, but only to

the instructions of the court below, asked and refused, or given, to which exceptions were taken. All of these are fully set forth in the opinion, in their order. The defendant below was convicted, and the nuisance ordered to be abated.

After verdict and before sentence, the defendant's counsel moved for a new trial, for the following reasons:

1. That the court erred in refusing to charge the jury as requested by the counsel for the defendant, and

2. That after the jury had a second time reported to the court that they had not agreed upon a verdict, the court erred in recharging the jury upon the effect of the evidence.

This motion was accompanied by affidavits purporting to set forth the substance of the comments of the judge upon the evidence. The court overruled the motion, denying the truth and propriety of the affidavits, and the defendant excepted.

In compliance with the request of the defendant's counsel who was absent on the occasion of the return of the jury into court the second time, the judge restated his remarks there made to the jury, and embodied them in a bill of exceptions, as follows:

"Be it remembered, that at the March term of the Circuit Court, in and for the county of Jefferson, on the 12th day of March, 1855, came on to be tried, the indictment against the above-named Benjamin Douglass, for maintaining a mill dam, charged as a nuisance, and the jurors in said cause having heard the evidence and the argument of counsel, and under charge of the court having retired to consider of their verdict; and having a second time returned into court and reported that they could not agree, were asked whether the difficulty was one of law or of evidence. To which one of the jurors replied, of both. One of the jurors inquired, if it appeared that the dam was built before there were any inhabitants residing in its vicinity, that would make any difference? The court informed the jury that if the pond raised by the dam was prejudicial to the health of the inhabitants it made no difference.

"One of the jurors then inquired if they found that stenches existed on the stream in its natural state, the keeping up the dam would be a nuisance.

"The court then charged the jury substantially, that if they found from the evidence that the dam increased the miasma,

Douglass vs. The State of Wisconsin.

malaria, or carbonic acid gas, by whatsoever name it was called, it would be a nuisance. The medical witnesses differed about terms, but not about facts. That if the testimony showed that the stenches were causes of disease, and that they were increased by means of the dam, it was a nuisance. That this is of the kind of causes in which there might be difference of opinion; that we could not think alike, we did not look alike, or act alike.

"That sometimes prejudices existed, and might influence the minds of jurors. They should be careful that they did not allow prejudice to influence their minds.

"That this was an important case; it had been tried once or twice before; had incurred a great expense; it was important they should agree. That he did not see any cause for disagreement—the evidence was very clear, and I think you ought to agree. The court has no power to compel you to agree, but I think in this case you ought to, and you should agree.

"To all of which the said defendant by his counsel did then and there except."

*J. E. Holmes*, for the plaintiff in error.

*Geo. B. Smith*, Atty. Genl., for the defendant in error.

*By the Court*, COLE, J. This is an indictment for a nuisance. The indictment consists of three counts alleging that the plaintiff in error unlawfully and injuriously kept up and maintained upon his land across Johnson's Creek in Jefferson county, a mill dam, by means of which the water flowing therein was obstructed, and set back, and flowed up said stream, and over its banks, and over a large tract of land adjoining said stream, near to certain highways, and in the vicinity of the dwelling-houses of divers citizens; that the wood, leaves, and other vegetable matter and animal substances brought down the channel of the stream, were lodged along the banks, corrupted and decayed, and became offensive and noxious and infected the air with deleterious and unwholesome smells along the said highway and about the said dwelling-houses.

As no question arises upon the indictment it is not necessary

to set it forth with more particularity. The defendant pleaded the general issue and went to trial at the last March term of the Jefferson circuit. Upon the trial the jury found the defendant guilty. A motion was made for a new trial, which was overruled, and the court gave judgment, that the defendant pay a fine of one dollar and costs of suit and remove the dam. To reverse this judgment the cause is brought to this court by writ of error.

The first error assigned here is the refusal of the judge to give the following instructions asked for by the defendant:

"4th. That the building of the dam across this stream of water, it not being navigable, was of itself lawful; and that upon an indictment against building or maintaining such a structure, it is necessary to show, by evidence, that the particular structure complained of produces an effect more injurious to the public health or the enjoyment of life than is common to such structures, to warrant a verdict of guilty against the builder or maintainer."

We do not think that a proper instruction to be given to the jury; for the very obvious reason, that a mill dam becomes a nusiance when it obstructs the water to such an extent that it overflows its banks and the surrounding country, and stagnates and becomes dead in pools, whereby the air along the highways, and around the dwellings, is infected with noxious and unwholesome vapors, and the health of the adjoining country is sensibly impaired. It is true, a mill dam is not necessarily a nuisance. It frequently, and most generally, is a great public convenience. Still, when it produces the mischievous consequences above named, it most clearly becomes one. Whether this dam did increase the malaria, and thereby render the adjoining country more unhealthy, was, under the evidence, properly left for the jury to determine. If it did, then it hurt, injured, annoyed and inconvenienced the public, and by the very definition became a nuisance. The instruction is not very happily expressed, and is susceptible of two constructions. One, that it was necessary for the prosecution to show that the existence of the dam was injurious to the public health. Certainly that was the very *gravamen* of the charge, the issue the jury was impanneled to try. We think that question was fairly submitted to the jury

by the court. But the other and more natural construction to be given to this instruction, seems to be this: that if it appears that this dam is less prejudicial to the public health than some other dams in the country, that then it is not a nusiance, and the prosecution fails. As already remarked, mill dams are not nuisances *per se.* No one could seriously contend for that proposition. But they become so, at some places, and under special circumstances, and when a mill dam becomes a nuisance at one place, it is no defence to say, that a greater nuisance is tolerated elsewhere.

Again; it is insisted that the court erred in refusing this instruction asked for by the defendant:

"That if the jury are satisfied from the evidence, that the mill dam in question was built before there were any inhabitants residing along the stream of water flowed thereby, the building of said dam being lawful in itself, the inhabitants that have settled along the margin of said pond, since the building of said dam, cannot complain of it as a nuisance."

We cannot think that instruction good law, although it may seem to have the support of *Rex vs. Cross* (2 *Carr. & P.* 483). In that case the defendant was indicted for a nuisance in keeping a house for slaughtering horses at a place called Bell Isle, in the parish of St. Mary, Islington. It was proved that very offensive smells proceeded from the defendant's slaughtering-house, to the annoyance of those who lived near it, and also, of persons who passed along a turnpike road leading from Battle Bridge to Holloway. The defendant put in a certificate and license under the statute of 26 *Geo. III, ch.* 71, § 1, authorizing him to keep a house for the slaughtering of horses. Abbott, C. J., in giving the opinion of the court, said: This certificate is no defence, and even if it were a license from all the magistrates in the country to the defendant, to slaughter horses in this very place, it would not entitle the defendant to continue the business there an hour after it became a public nuisance to the neighborhood. He then goes on to make some observations not particularly called for by the case before him, and which seem to conflict in some degree with the principles just laid down, to this effect: That if a party set up a noxious trade remote from habitations and public roads, and after that, new houses are built,

and new roads constructed near it, the party may continue his trade, although it be a nuisance to persons inhabiting such houses, or passing along such roads.

There really appears to be some confusion of ideas in this language. Since it is difficult to understand how a noxious trade is less a nuisance merely because it happens to have been established before houses are built, and settlements exist about it. However long it may have been established, it would be equally injurious to the enjoyment of life, or the health of the community. There is no such thing as a prescriptive right, or any other right, to maintain a public nuisance. *Mills vs. Hall,* 9 *Wen.* 315; *Weed vs. Hoonly,* 7 *East,* 195; *The People vs. Cunningham et al.,* 1 *Denio,* 524; *The People vs. Townsend,* 3 *Hill,* 480.

And this follows, we suppose, from the plain principle of common justice, that every person shall use his own, so as not to injure his neighbor, or endanger the lives, health and comfort of the community in which he lives. And if he does thus use his property, it becomes a private nuisance in the one case, and a public one in the other. What defence can it possibly be to this indictment to say that the dam was built long before any one lived upon the margin of the stream, or there were any settlements about it? Is the malaria any the less deadly in its effects because it has arisen from the dam years before there was any population about to breathe it? If it spreads disease and death through the neighborhood, can it be legalized by any lapse of time? To state such propositions is to answer them. Besides all this, there is another very good answer to be given to this instruction. *Non constat,* but the dam may have been changed since it was first built, and that, too, quite recently, and this very change may have produced the evil consequences complained of. There are ways in which the dam may now produce malaria which did not exist at a former period.

The third error assigned is: that the court erred in questioning the jury as to the cause of their disagreement, after they had a second time reported that they could not agree without their first asking further explanation of the law applicable to the case. It appears that the jury were unable to agree upon their verdict, and returned a second time and reported that fact to the court. Thereupon they were asked by the judge whether their

difficulty was one of law or of evidence; to which interrogatory one of the jury replied, of both. After some remarks of the judge, which will soon be noticed in connection with the next error assigned, the case was again submitted to them, when they found the defendant guilty. It is contended that this was in violation of section 30, chapter 97, R. S. The latter clause of that section provides, that if the jury shall return a second time into court without having agreed upon a verdict, they shall not be sent out again without their own consent, unless they shall ask from the court some further explanation of the law. We think this provision was intended for the protection of the jury, and in case they are unable to agree, and return a second time into court, that they shall not again be sent out without their consent, unless they ask some further explanation of the law. As the jury can only be discharged from the consideration of a cause by the court, it was feared, perhaps, that in cases of difficulty, when there was room for doubt, or when an oppressive judge was determined to convict, he might compel a jury to agree upon a verdict, even against their most sincere and conscientious scruples, as the only way of obtaining a discharge. In this case it does not appear that the jury objected to again deliberating upon the evidence, or that any improper means were used to make them agree upon their verdict.

The only remaining objection to be noticed is, that the court erred in commenting to the jury, at this time, upon the effect of the evidence, their prejudices, and in repeatedly urging them to agree. After a careful examination of the charge of the judge, as contained in the second bill of exceptions—and we can only look at the bill of exceptions, and not to any affidavits that may have irregularly got into the cause—we find nothing that can be assigned for error here. The judge in substance told the jury that if from the evidence they should find that stenches were the causes of disease, and that stenches or malaria were increased by the existence of the dam, that then it was a nuisance. He cautioned them to guard against the influence of prejudice upon their minds; stated that the case was an important one; had been tried once or twice before; that great expense had been incurred; and it was important they should agree; that he did not see any cause for disagreement; that the evidence was clear, and thought

they ought to agree, but the court could not compel them to agree.

Without determining whether this language was in all respects proper, and such as should have been addressed to the jury, yet upon the whole we do not think it fairly obnoxious to the strictures passed upon it by the counsel for the plaintiff in error, who insists that it is really a direction of the court as to how the jury must find their verdict. What was said in regard to the dam's being a nuisance, providing it appeared from the evidence that the malaria was increased by its existence, relates to principles of law applicable to the case, and was correct. What was said about the evidence being clear, &c., cannot be considered as a direction to the jury as to how they should find their verdict. The judge expressed his opinion upon the testimony, and its effect upon his own mind, but he expressly tells them, that they ought to agree, and that his view of the evidence was not obligatory upon their consciences. They were bound to decide for themselves upon the weight of the evidence, and to respond by their verdict according to the convictions of their own judgments.

The judgment of the court below is affirmed.