(40 Misc. Rep. 256.)

### PEOPLE v. YOUNG.

(Supreme Court, Special Term, Kings County. March, 1902.)

1. CRIMINAL LAW—CONVICTION—CERTIFICATE OF REASONABLE DOUBT.

Defendant, after attempting to pry open a window in the nighttime, in order to enter the house to commit burglary, and while trying to escape, killed a man, who was trying to prevent him. *Held*, that a proper case for the issue of reasonable doubt as to murder in the second degree is presented where the court charged that at the time of the homicide defendant was attempting to commit a burglary, though he had, as a matter of fact, desisted therefrom, and was attempting to escape, and refused to charge as to manslaughter.

2. SAME—REMARKS OF JUDGE.

Where the trial judge called a jury, who had retired to consult on the evidence on a trial for murder, and stated that their failure to agree would result in a great waste of public time and money, and that the case was not one which presented a proper reason for disagreement, and called upon each juror separately to ask if he desired any information, it authorized the issuance of a certificate of reasonable doubt on conviction of the accused.

Duncan Young was convicted of murder in the second degree, and applies for a certificate of reasonable doubt. Granted.

See (Sup.) 76 N. Y. Supp. 275.

Lewis S. Chanler, for the application.

Robert C. Taylor, Asst. Dist. Atty., opposed.

GAYNOR, J. The defendant was tried for murder in the first degree. The evidence tends to establish the following facts: A man was discovered in the night-time in the act of forcing open a second story rear window of a house, and tried to escape. He was hunted over the rear fences from yard to yard by the police and the awakened residents of the block. As he dodged about from one point of concealment to another, searching for a point of exit, he was pelted with missiles, and also shot at with pistols seven or more times. At the last he ran up a rear fire escape to get away from a woman with a pistol. She shot at him twice from below as he went up, and a man leaned out of a window above and struck at him with a stick or board. He shot and killed the latter, and continuing up the fire escape to the story above, entered a window and made his escape through the house to the street. This was on the opposite side of the block from the house he had been discovered trying to enter, and the pursuit had lasted a considerable time, apparently more than ten minutes.

The defendant was arrested some days later, charged with the homicide. The evidence against him on the trial consisted of alleged admissions freely made by him before his arrest to his paramour and his former paramour that he was the guilty person, the occasion thereof being the arrest of another person for the homicide; and also of his identification after his arrest by a woman who had seen him while he was being hunted in the back yards on the night of the homicide, as already described, and by another woman who had seen him in the street in the vicinity that same night before the said attempt to commit burglary was discovered.

The said evidence was by no means conclusive, being to some extent suspicious and uncertain. It called for special care on the part of the court and jury. The jury had much difficulty in accepting it as safe, and remained out over night. Next morning the learned trial judge brought the jury into court and spoke to them at length, although they had not asked for further instruction, or communicated with the court at all. He told them it was very unfortunate they had not agreed. He urged the importance of the case, the length of time the trial had taken, the expense of public money which it caused, which he said "no one can figure or realize," the mental strain of the "parties engaged" in it, and the loss of the jurors' own time, as reasons why they should not fail to agree. He invited any juror to ask him questions so that he could aid them to an agreement.

About two hours afterwards the learned trial judge sent for the jury again, and spoke to them at length, although they had not meanwhile asked for any instructions, or sent any communication

to the court.　They were called away from their deliberations, and the first words of the learned trial judge to them were:

"I have sent for you again. I want to repeat to you what I said this morning, that your failure to agree results in a very great waste of public time and money, and a miscarriage of justice, in an unnecessary infliction on the defendant, and the infliction of a very large and unnecessary amount of labor on the district attorney. If there is any possibility of your agreeing, I will keep you together further. It does seem to me that this case is not one that presents a proper reason for a disagreement."

It seems to me a matter of reasonable doubt, at least, whether it was not a substantial error to disturb the deliberations of the jury with such admonitions as these, which certainly put them under pressure.　It is not always a reproach to a jury to disagree; sometimes it is a wholesome outcome; and considerations of work, time and expense should not influence a jury, especially in so grave a case.　Such considerations in the jury room to influence a verdict would be illegal. Some have the erroneous notion that such a trial is a great expense to the public, and jurors might be influenced by that fact being urged upon them, whereas it is usually of little expense, as this trial apparently was.

The effect of these remarks to the jury must have been enhanced, it seems to me, by what followed.　The learned trial judge urged the jury to "point out any particulars of law or fact that is troubling you," so that he might by his instruction remove the trouble.　The jury had not sent for any instruction, nor did they now ask for any. The foreman responded that he thought the evidence was understood perfectly well, and that "it was merely a matter of opinion that different jurors gave to the evidence, that is, the weight they give it."

Nevertheless, the learned trial judge called upon each juror separately and in succession to state if he did not "desire any information," and each responded in the negative.　At this point the District Attorney interposed and said that it occurred from time to time that there could be an honest difference of opinion, and that "we should be loath to coerce a verdict, where there is an honest difference of opinion."

It seems to me a matter of reasonable doubt whether the putting of such a stress upon a jury, not only collectively but by a specific call upon each, is not substantial error.

On the counsel for defendant taking an exception to "each and every question propounded to the jury," the learned trial judge said: "I will withdraw them all.　I do withdraw them all, and direct the jury to pay no attention to them."　But I suppose the question of whether this was a cure remains a doubtful matter.

The learned trial judge charged the jury that they should find the defendant guilty of murder or nothing, and refused the request of the defendant's counsel to instruct them as to the law of manslaughter.　When the way the defendant was being hunted, as already described, is considered, and that he was being fired at, or had just been fired at twice, from the yard below the fire escape, while the deceased was striking at him with a stick from above, and he may have been in peril of being knocked off the fire escape and shot, it is difficult to see how the trial judge had the right to decide as matter

of law that he may not have lacked an intent to kill; and such intent was a necessary element of murder, unless at the time of firing the fatal shot the defendant was, within subdivision 3 of the section of the Penal Code which defines murder in the first degree (section 183), "engaged in the commission of, or in an attempt to commit, a felony," etc. The learned trial judge charged the jury that he was so engaged if they found that he was the person who had been discovered at the beginning attempting to force open the window, provided he intended to enter to commit a burglary. But he was not at the time of the homicide so engaged. On the contrary, he had desisted, and was a considerable distance away, viz., on the other side of the block, trying to escape. If he can be said to have been still engaged in the burglary, how far would he have had to get away before he would not be engaged in it?

Let the certificate issue.