(118 App. Div. 593)

## PEOPLE v. DIXON.

(Supreme Court, Appellate Division, Fourth Department. March 13, 1907.)

1. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES.

In a prosecution for burglary, it was improper to show by a witness who testified that he had aided defendant in committing the burglary in question, that he and defendant had committed other burglaries at other times wholly disconnected with the crime for which defendant was on trial.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 822.]

2. SAME.

In a prosecution for burglary, it was improper to permit a witness to give a conversation between himself and defendant which occurred after the burglary with which defendant was charged, the evident purpose of which was to show that defendant attempted to persuade witness to assist him in robbing a post office.

3. WITNESSES—IMPEACHMENT—PARTY'S OWN WITNESS.

At the second trial of a criminal prosecution after defendant had rested, the district attorney called the father of defendant, who had been a witness for defendant on a former trial when the jury disagreed, but was

not called at the second trial. The purpose in calling the witness was not apparent unless it was to show that he had been untruthful on the former trial. *Held*, that there was no justification for getting before the jury the testimony on the former trial, and then subjecting witness to a severe cross-examination for the purpose of discrediting him.

4. CRIMINAL LAW—TRIAL—IMPROPER ARGUMENT.

In a criminal trial, the district attorney in his argument stated that the law of the case and the suggestion of reasonable doubt and every other mantle of protection thrown around defendant sometimes works an injustice to the cause of right, and that it was apparently so doing in this case. Defendant's counsel stated that the remark was objectionable, and the court thereupon emphasized what the district attorney had said by stating that defendant had an objection and exception. *Held* prejudicial to defendant.

5. SAME—INSTRUCTIONS AFTER SUBMISSION.

After the jury had been out all night and unable to agree, the court called their attention to the fact that the case had been tried once before, that two witnesses were in custody, that the jury had probably got all the light that could be given to any jury, and that if defendant was innocent he ought to go free; and, further, that "next to not having any courts at all, in time, it would be almost equally subversive of the administration of justice if time after time the juries will not agree. The occasional disagreement, that is nothing. That is an incident to the system. But if we cannot get agreements  *  *  *  it certainly does very much to cause unrest in the administration of the law." *Held*, that such remarks were improper.

Robson, J., dissenting.

Appeal from Onondaga County Court.

William Dixon was convicted of burglary in the third degree, and, from an order denying a motion for a new trial, he appeals. Reversed and remanded.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Harley J. Crane, for appellant.
Wm. L. Barnum, Dist. Atty., for the People.

KRUSE, J.  Substantially the only evidence which tends to implicate the defendant in the commission of the burglary of which he was convicted is that of the self-confessed criminal who claims that he aided the defendant in committing the crime, and another who claims to have received from the defendant certain articles under the belief that they had been stolen.  Such of the stolen property as was recovered was found in the possession of the person who admitted committing the burglary at the time he was arrested.  And there is no evidence that the defendant ever had it in his possession or was in any way connected with the crime, save that furnished by the two men above referred to.  The defendant gave evidence tending to show that he was attending a theater in the city of Syracuse on the night when the crime was committed, and at a time when, if the testimony given on his behalf is true, he could not have been engaged in committing the burglary.  Six witnesses also testified to his good character.  He lived in Syracuse, where the trial occurred.  Only two witnesses were called to controvert that fact.  The defendant had been tried before on this same charge and the jury had disagreed, and upon this trial the jury were out all

night and unable to agree until the Trial Court urged upon them the necessity for reaching a conclusion, which will be adverted to later. It will thus be seen that the case for the prosecution was close at best. We think that such errors were committed upon the trial as require us to set aside the judgment of conviction and remit the case for a new trial.

1. It was improper to show by the witness Austin, who testified that he aided the defendant in committing the burglary in question, that he and the defendant had committed other burglaries at other times, and wholly disconnected with the crime for which the defendant was on trial. It is true that as regards the Elbridge post office burglary the answer of the witness was stricken out, and the jury instructed to disregard it. Very likely the error was cured so far as it could be by the instructions of the trial judge. But it was improper to get this fact before the jury. It does, however, appear that similar testimony was given by this same witness over the defendant's objection and exception, relating to the Centerville post office. The witness was permitted to give a conversation between himself and the defendant which occurred after this burglary for which the defendant was being tried; the evident purpose of which was to show that the defendant attempted to persuade the witness to assist him in robbing the post office. The trial judge received the evidence, not as proof of the commission of the crime in question, but, as he stated, to show an unlawful purpose. We think it was incompetent for any purpose, and should not have been received. After the defendant had rested, the district attorney called the father of the defendant, who had been a witness for the defendant on the former trial, but was not called by him on this trial. Just what the purpose of the district attorney was in calling him is not apparent, unless to show that he had been untruthful on the former trial. The only material testimony he elicited from the witness was that which tended to show that the defendant was at home on the evening in question when the burglary was committed, instead of being at the theater as he claimed. If it was thought material to show that fact, the attention of the witness, if unwilling or adverse to the prosecution, might have been called to his former testimony upon that point; but there was no justification for getting before the jury his testimony on the former trial and subjecting him to a severe cross-examination, for the purpose of discrediting him, for by calling him the district attorney vouched for his credibility.

2. During the summing up the trial judge seems to have been momentarily absent, and the counsel for the defendant and the district attorney seem to have had some controversy; the district attorney claiming that the counsel for the defendant made some improper remarks. Just what was said, and all that was said, the record does not disclose, but the trial judge stated that apparently things were said that should not have been said. The controversy was to some extent continued in the hearing of the trial judge; the district attorney saying, among other things, that the law of the case and the suggestion of reasonable doubt and every other mantle of protection thrown around the defendant, sometimes works an injustice to the cause of right, and that it was apparently so doing in this case. The defendant's counsel stated

that the remark was objectionable, and the court thereupon emphasized what the district attorney had said by stating that the defendant had an objection and exception.   We think that this was prejudicial to the defendant.

3. After the jury had been out all night and unable to agree further, instructions were given them.   While the presiding judge was careful to say to the jury in the beginning that he did not desire to influence the individual opinion of any juror, we fear what was said later on did have precisely that effect.   After calling the attention of the jury to the fact that the case had been tried once before, that two witnesses were in custody, that the jury had probably gotten all the light that could be given to any jury, and that if the defendant was innocent he ought to go free, the judge said:

"Next to not having any courts at all, in time, it would be almost equally subversive of the administration of justice if time after time juries will not agree.   The occasional disagreement, that is nothing.   That is an incident to the system.   But, if we cannot get agreements in Onondaga county, it certainly does very much to cause unrest in the administration of the law.   Now, with these suggestions, gentlemen, you may retire."

The jury may well have received the impression from these remarks that a failure upon their part to agree upon a verdict was a reflection both upon their intelligence and their integrity, and we cannot say that the case was so plain against the defendant that he was not prejudiced thereby.   We think that under the circumstances of this case the errors to which we have called attention require the granting of a new trial.

The judgment of conviction, and the order denying the motion for a new trial, should therefore be reversed, and a new trial granted.   All concur, except ROBSON, J., who dissents.