## SUPREME COURT—APP. DIVISION—FOURTH DEP.,
### March 13, 1907.

## THE PEOPLE v. WILLIAM DIXON.

(118 App. Div. 593.)

(1). BURGLARY—THIRD DEGREE—EVIDENCE.

It is error to allow a witness who has aided in a burglary to testify that he and the defendant committed other burglaries wholly disconnected with the crime in question.

(2). SAME.

Evidence of conversations between the defendant and the witness relating to other unconnected burglaries is not admissible to show an unlawful purpose.

(3). TRIAL—REMARKS BY COURT EMPHASIZING DISTRICT ATTORNEY'S ATTACK ON DEFENDANT'S ATTORNEY.

When the district attorney has stated before the jury that the defendant's attorney had made improper remarks and that the law which throws a mantle of protection around the defendant sometimes works injustice, it is prejudicial to the defendant for the court to emphasize the district attorney's remarks by stating that the defendant's counsel, if dissatisfied, has an objection and exception thereto.

(4). SAME.

It is prejudicial for the court, when the jury has been out all night without being able to agree, to state that if agreements cannot be had in that county it does very much to cause unrest in the administration of the law.

APPEAL by the defendant, William Dixon, from a judgment of the County Court of Onondaga county, rendered on the 4th day of May, 1906, convicting him of the crime of burglary in the third degree, and also from an order bearing date the 4th day of June, 1906, and entered in the office of the clerk of the county of Onondaga denying the defendant's motion for a new trial.

*Harley J. Crane,* for the appellant.

*William L. Barnum, District Attorney,* for the respondent.

KRUSE, J.:

Substantially the only evidence which tends to implicate the defendant in the commission of the burglary of which he was convicted is that of the self-confessed criminal who claims that he aided the defendant in committing the crime, and another who claims to have received from the defendant certain articles under the belief that they had been stolen. Such of the stolen property as was recovered was found in the possession of the person who admitted committing the burglary at the time he was arrested. And there is no evidence that the defendant ever had it in his possession or was in any way connected with the crime, save that furnished by the two men above referred to.

The defendant gave evidence tending to show that he was attending a theatre in the city of Syracuse on the night when the crime was committed, and at a time when, if the testimony given on his behalf is true, he could not have been engaged in committing the burglary. Six witnesses also testified to his good character. He lived in Syracuse, where the trial occurred. Only two witnesses were called to controvert that fact. The defendant had been tried before on this same charge, and the jury had disagreed, and upon this trial the jury were out all night and unable to agree until the trial court urged upon them the necessity for reaching a conclusion, which will be adverted to later.

It will thus be seen that the case for the prosecution was close at best. We think that such errors were committed upon the trial as requires us to set aside the judgment of conviction and remit the case for a new trial.

1. It was improper to show by the witness Austin, who testified that he aided the defendant in committing the burglary in question, that he and the defendant had committed

other burglaries at other times, and wholly disconnected with the crime for which the defendant was on trial. It is true that as regards the Elbridge post office burglary the answer of the witness was stricken out and the jury instructed to disregard it. Very likely the error was cured so far as it could be by the instructions of the trial judge, but it was improper to get this fact before the jury. It does, however, appear that similar testimony was given by this same witness, over the defendant's objection and exception, relating to the Centerville post office. The witness was permitted to give a conversation between himself and the defendant which occurred after this burglary for which the defendant was being tried, the evident purpose of which was to show that the defendant attempted to persuade the witness to assist him in robbing the post office. The trial judge received the evidence, not as proof of the commission of the crime in question, but, as he stated, to show an unlawful purpose. We think it was incompetent for any purpose and should not have been received.

After the defendant had rested, the district attorney called the father of the defendant who had been a witness for the defendant on the former trial, but was not called by him on this trial. Just what the purpose of the district attorney was in calling him is not apparent, unless to show that he had been untruthful on the former trial. The only material testimony he elicited from the witness was that which tended to show that the defendant was at home on the evening in question when the burglary was committed instead of being at the theatre as he claimed. If it was thought material to show that fact, the attention of the witness, if unwilling or adverse to the prosecution, might have been called to his former testimony upon that point, but there was no justification for getting before the jury his testimony on the former trial and subjecting him to a severe cross-examination for the purpose of discrediting

him, for by calling him the district attorney vouched for his credibility.

2. During the summing up the trial judge seems to have been momentarily absent, and the counsel for the defendant and the district attorney seem to have had some controversy, the district attorney claiming that the counsel for the defendant made some improper remarks. Just what was said and all that was said the record does not disclose, but the trial judge stated that apparently things were said that should not have been said. The controversy was to some extent continued in the hearing of the trial judge, the district attorney saying among other things that the law of the case and the suggestion of reasonable doubt and every other mantle of protection thrown around the defendant sometimes works an injustice to the cause of right and that it was apparently so doing in this case. The defendant's counsel stated that the remark was objectionable and the court thereupon emphasized what the district attorney had said by stating that the defendant had an objection and exception. We think that this was prejudicial to the defendant.

3. After the jury had been out all night and unable to agree, further instructions were given them. While the presiding judge was careful to say to the jury in the beginning that he did not desire to influence the individual opinion of any juror we fear what was said later on did have precisely that effect. After calling the attention of the jury to the fact that the case had been tried once before; that two witnesses were in custody; that the jury had probably gotten all the light that could be given to any jury, and that if the defendant was innocent he ought to go free, the judge said: " Next to not having any courts at all in time it would be almost equally subversive of the administration of justice if time after time juries will not agree. The occasional disagreement, that is nothing; that is an incident to the system, but if we cannot get agreements in

Onondaga County, it certainly does very much to cause unrest in the administration of the law. Now, with these suggestions, gentlemen, you may retire."

The jury may well have received the impression from these remarks that a failure upon their part to agree upon a verdict was a reflection both upon their intelligence and their integrity, and we cannot say that the case was so plain against the defendant that he was not prejudiced thereby. We think that under the circumstances of this case the errors to which we have called attention require the granting of a new trial.

The judgment of conviction and the order denying the motion for a new trial should, therefore, be reversed and a new trial granted.

All concurred, except ROBSON, J., who dissented.

Judgment of conviction reversed and a new trial ordered.

## URGING OR COERCING JURY TO AGREE IN CRIMINAL CASES.

The courts view with displeasure any statements on the part of the trial judge, in a criminal case, showing his attitude toward the accused or tending to influence the deliberations of the jury. No general rule can be formulated to determine whether the language used by the trial judge was, in fact, coercive and prejudicial to the rights of the accused. Each case must be governed by its own facts.

### COERCING AGREEMENT.

By the ancient common law, jurors were kept together as prisoners of the court, until they had agreed upon a verdict, as it was regarded, not only proper, but requisite, that they should be coerced into an agreement upon a verdict.

Mr. Justice Kent, in People v. Olcott, 2 John. Cas. 301, condemned the practice of compelling juries to agree in no uncertain terms. He said: "The doctrine of compelling a jury to unanimity by the pains of hunger and fatigue, so that the verdict, in fact, be founded

4

not on temperate discussion and clear conviction, but on strength of body, is a monstrous doctrine, that does not . . . stand with conscience, but is altogether repugnant to a sense of humanity and justice. A verdict of acquittal or conviction, obtained under such circumstances, can never receive the sanction of public opinion."

Any obvious effort of the trial court to drive the members of the jury into an agreement requires a new trial, in case they do agree. People v. Sheldon, 156 N. Y. 268; People ex rel. Flaherty v. Neilson, 22 Hun, 1.

Requiring the jury to agree before the adjournment of court or remain in confinement for four days without the aid or protection of the court, is coercive and improper. Ingersoll v. Lansing, 51 Hun, 101.

And a statement by the judge in the case of one charged with keeping a saloon open on Sunday, that the jury would be kept together until they agreed on a verdict, was held in State v. Place, (So. Dak.) 107 N. W. 829, to be error.

A statement to the jury in a seduction case, although made in open court, to the effect that if they reached a verdict by a certain time they would be discharged, but if they did not they would be held until they should agree on a verdict, was regarded in State v. Hill, 91 Mo. 423, as having been made by the court to induce a verdict by the time named and was, therefore, ground for reversal.

In Maury v. State, 68 Misc. 605, it appeared that the jury in a murder case retired at 10:30 on Saturday night and after deliberating an hour asked the judge how long they would have to return a verdict, and the judge informed them that court would adjourn at 12 o'clock, and the jury at once returned a verdict of guilty. In reversing the judgment of conviction, the court held that either the verdict must be based upon the assumption of a misunderstanding by the jury of the law of the case, or want of sufficient time for deliberation.

A jury in a murder case must be deemed coerced, so that a judgment of conviction based on their verdict will be reversed, when they agreed after they had been out for eighty-four hours without beds or cots, during forty of which they had been confined in a small room, and from the remarks of the court and the treatment they had received they had every reason to believe that a still longer period of confinement on chairs and hard benches was in store for them. People v. Sheldon, 156 N. Y. 268.

The case of Berry v. People, 1 N. Y. Crim. Rep. 43, in which the defendant was charged with keeping a disorderly house and maintaining an obscene nuisance, was not regarded in People v. Sheldon, supra, as in conflict with the doctrine of recent authority upon the question. In that case the jury, after being charged, retired for deliberation and upon returning to the court asked for further instructions and then announced their inability to agree upon a verdict. In addressing the jury the recorder said: ' I would discharge you, but under my sense of duty I cannot. . . . After a few days, it [the case] has been presented to you, and thoroughly argued and tried, witnesses were examined and cross-examined. I do not care what you find; guilty or not guilty; it is perfectly immaterial to me. But I say it is my duty if you cannot agree, that I shall lock you up for the night; that is a most ungrateful thing for me to do to any jury. As I told you Friday night, I do not want you detained from your families, and I do not now. If you cannot agree, I shall order an officer to take you in charge. I will give you fifteen minutes, and see if you can arrive at a conclusion." In affirming the judgment of conviction the court of appeals in 1 N. Y. Crim. Rep. 57, in per curiam, said: " The alleged threat to lock up jurors if they failed to agree was, we think, only intended as a statement that the jury would have to remain over night, as the court would adjourn. Nothing like a threat of imprisonment or punishment could have been intended." The decision of the court, therefore, was that there had been no attempt at coercion, the language complained of not being susceptible of a construction that would give it that effect with the jury, and not that a judgment would be allowed to stand either where the trial court had attempted to coerce the jury, or the language used by him was of such a character that it probably had that effect.

After the jury in People v. Dixon, 118 App. Div. 593, 21 N. Y. Crim. Rep. 45 had been out all night considering a burglary charge and were unable to agree on a verdict, the presiding judge called their attention to the fact that the case had been tried once before, that two witnesses were in custody, that the jury had probably gotten all the light that could be given to any jury, and that if the defendant was innocent he ought to go free, and then said: " Next to not having any courts at all, in time, it would be almost equally subversive of the administration of justice if time after time juries will not agree. The occasional agreement, that is nothing; that is an incident to the system, but, if we cannot get agreements in Onondaga County, it certainly does very much to cause unrest in the administration of the law. Now, with these suggestions, gentlemen, you may retire."

## URGING AGREEMENT—REVERSIBLE ERROR.

Urging the jury to agree was viewed with disfavor in State v. Ivanhoe, 35 Or. 150, in which the defendant was charged with assault with intent to kill. When the jury reported their inability to agree the court told them that a great deal of time had been taken up and if they did not agree the case would have to be tried by another jury who could not arrive at a verdict any better than they could; that it was their duty to agree if they could conscientiously; that they should pay proper respect to the opinions of each other, that the single object to be effected was to arrive at a true verdict, which could only be done by deliberation and mutual concessions; that no juror should violate his conscience, but in determining whether his convictions were sustained, he should consider the opinions of the other jurors, and if he could then conscientiously acquiesce in the verdict, it was his duty to do so.

And in People v. Engle, 118 Mich. 287, which was a prosecution for violation of the local option law, the court stated to the jury upon their announcement that they could not agree, after having deliberated all night that: " The interests of both the people and the respondent are important in this case, and it is very important that you should, if possible under the testimony, agree upon a verdict. . . . I have no doubt that each side has used all the powers of persuasion, that of the individual jurors, to convince his fellow jurors of the case, as it looks to him. Now, suppose you go out and try the reverse, and let each of you try as hard as you can to be persuaded instead of trying to persuade the others. . . . In view, as I have said, of the importance of the verdict in this case, I do not feel like discharging you at this time." Within an hour after this charge the jury returned a verdict of guilty. This statement was held to constitute a reversible error, as it had a tendency to make the jurors feel that they must give way to their honest convictions upon the merits, and agree with the majority, though they had a reasonable doubt of the guilt of the accused.

The same view was taken in Bennett v. State, 10 Ohio Cir. Ct. 84, of the judge's statement in a murder case, that " I do not want to hurry you up unnecessarily, but I cannot get home at all for Sunday, unless I go very soon, and it is that I want to inquire about, I called you in for that purpose. If you are likely to come to a verdict you may retire again and resume your deliberations. Be as expeditious as you conveniently can." A verdict of guilty was returned in a few minutes after this statement.

## URGING AGREEMENT—NOT ERROR.

On the other hand, the statements of the trial court in the following cases were not regarded as coercive in character or prejudicial to the rights of the accused.

The trial court may impress upon the jury the importance of the case and urge them to reach a verdict.

Where the jury returns into court and informs the trial judge that they are unable to agree, it is not error for the judge to impress upon them the importance of the case and urge them to listen to argument and sacrifice pride of opinion, and send them back for further deliberation, when it does not appear that the jury was coerced into a verdict by a prolonged session followed by physical suffering. State v. Dudoussat, 47 La. Ann. 977.

The court may admonish a jury which had deliberated twenty-four hours without reaching an agreement, that it was important that they should agree upon a verdict if it was possible for their minds to come together upon the question of the innocence or guilt of the defendant, that they should fairly and frankly consider the testimony and the instructions given them by the court, and if upon further consideration any of them become satisfied that the position first taken by them was wrong, they should not hesitate to yield. In this case considerable time elapsed after the admonition was given before an agreement was reached and a verdict returned finding the defendant guilty of stealing cattle. State v. Garrett, 57 Kan. 132.

And the trial court may properly tell the jury in a murder case, that the guilt or innocence of the accused is a matter for each of them to decide for himself, but that it is for the interest of society that they should reconcile their differences if they can, and agree upon a verdict. Dow v. State, 31 Tex. Crim. Rep. 278.

It is not reversible error for the trial court to say to the jury, on the third trial of a forgery case, after they have been out some time and failed to agree, that it is very important that a verdict should be arrived at, and that they should retire again and make an earnest effort to reach a verdict. State v. Olds, 106 Iowa, 110.

A defendant charged as a common seller of intoxicating liquors has no ground of exception for the statement of the trial judge, that, although the rights of the defendant and the interests of the public require that public prosecutions should be terminated, and while no juror should render a verdict against his convictions, it was a

fact for any dissenting juror's consideration that the rest of the panel differed from him. Com. v. Whalen, 82 Mass. 25.

After the jury, in a case for keeping a common nuisance, had failed to agree, the trial judge said: " As it appears that this case has been tried before, and that the jury were unable to agree, the court hopes, if you conscientiously can, under the instructions given, you will be able to agree before morning." These statements of the trial judge were not regarded as error in Com. v. Kelley, 165 Mass. 175.

Merely directing the jury to return for further deliberation, is not of itself a ground for setting aside a verdict of guilty on the charge of bribing an official, where it subsequently appeared that the disagreement arose entirely from the fact that the jury did not clearly understand the charge of the court in certain particulars, and that when they were further explained they soon reached an agreement. United States v. Ingham, 97 Fed. 935.

There is no impropriety in the act of the court, upon being informed by the jury that there is no likelihood of an agreement, in saying to them: " Well you are sensible men. I do not wish to force you to make a verdict, but I will stay with you the day. Retire to your room and see if you can agree upon a verdict." Jones v. State, 117 Ga. 710.

And merely saying to the jury in a murder case, that the court need not admonish this intelligent jury that it is important to the ends of justice, and to secure public respect for our judicial tribunals, that juries should agree upon verdicts in cases submitted to them, was held in State v. Hawkins, 18 Or. 476, not to be erroneous.

And a statement by the trial judge after the jury had been out all night, that he has determined not to discharge them until they have agreed, was held in State v. Green, 7 La. Ann. 518, not to be error. The propriety of this decision may well be questioned.

In Patterson v. State, 122 Ga. 587, it was held that no error was committed by the trial judge in stating to the jury that he disliked to leave the case with them for further consideration, but it " must be decided by a jury." This expression of regret was construed by the supreme court to the effect that the judge would have been glad to relieve the jury from further service, but, as the issue was a matter which could not be passed upon by a judge, he was obliged to leave it to a jury, and that it did not contain a threat that he would detain the jury until they did agree.

The action of the court in telling the jury in a theft case, to "pass on the case as soon as you can, as you are the special venire in the case that will come up next," which statement the court afterward explained by saying that he wanted the jury to commence their deliberations as soon after their dinner as they could, was held in Wilson v. State (Tex. Crim. App.), 28 S. W. 200, to be no ground for reversal, where it did not appear that such action unduly influenced the jury.

The fact that after the jury, in a case for the wilful killing of a mule, had reported that they could not agree, the court stated "if it was about the punishment they could not agree, to return a verdict and the court would fix that matter," was not regarded in State v. Daugherty, 106 Mo. 182, as prejudicial error, where the jury did not follow the instructions, but returned a verdict fixing the defendant's guilt and the punishment.

In State v. Lawrence, 38 Iowa, 51, after the jury in a murder case had failed to reach a verdict after fully six hours' deliberation, the court inquired of them how they stood. Upon being informed by one of the jurors "that they did not know what the opinion of one or two of the jurors was, but that they knew how they voted," the court said: "That if any juror went into that jury box with the pre-determination as to how he should find his verdict, and to hang the jury, or to cause a disagreement if the verdict could not be rendered as he wanted it, he would have a 'happy time of it' to speak facetiously; that it had been reported to the court that two of the jurors went into the jury box for the purpose of controlling the verdict, or securing a disagreement; and that if so, they were infinitely worse than the defendant himself. That he hoped the report was not true; that he did not wish by these remarks, to interfere with the opinion or action of any juror who acts conscientiously, and in accordance with his best judgment." A verdict of the jury was returned in about two hours after these remarks were made to them. The appellate court said that the defendant could not have been prejudiced by the action of the court complained of, as we do not see how any honest and fair minded juror conscientiously seeking after truth and holding with an even hand the scales between the state and the accused, could have returned any other verdict than the one which was rendered. The propriety of the remarks of the court was regarded by the appellate court as somewhat difficult to vindicate, but that they did not constitute reversible error.

## DIRECTING FURTHER DELIBERATION AFTER JURY OUT LONG TIME.

The fact that the jury has already been out a long time does not make a direction for further deliberation an abuse of discretion.

The trial court may properly charge in a murder case, that it is the duty of a jury to agree, and for that purpose the court may send them back to the jury room for further deliberations. Just how long they may be kept together for that purpose is entirely within the discretion of the court. People v. Stock, 1 Idaho, 218.

After the jury in a forgery case had deliberated from the 14th of the month until the 17th without reaching a verdict, the trial court in State v. Pierce, 136 Mo. 34, said to them: " This case must eventually be determined by a jury. The object of the jury system is to have the aggregate wisdom of twelve men instead of one. But, if they do not agree, the system, that far, is a failure. Whilst I do not wish to be understood as attempting to force an agreement, I hope you will consult together, and try and agree, if you can conscientiously do so, and I will therefore return you to your room to make another effort." On the same day a verdict of guilty was agreed upon. In passing upon the nature of these statements, the appellate court said: " We discover nothing objectionable in them. It belongs to the court to determine whether and when a jury shall be discharged, and the jury may be briefly told, on such occasions, in a general way, why the court desires further to detain them."

It was claimed in State v. Palmer, 40 Kan. 474, 20 Pac. 270, which was a prosecution for obtaining money under false pretenses, that the trial court erred in calling the jury into court on May 29 while they were deliberating, and telling them that unless they agreed upon a verdict they would be compelled to stay in the jury room during May 30th, a legal holiday. But the supreme court did not regard this as a material error, as the jury did not return their verdict on May 29, or on May 30th, but rendered it on May 31st.

And merely keeping the jury in a murder case in confinement for four days, was held in State v. Rose, 142 Mo. 418, not to be unreasonable, where no coercion is used.

The fact that the jury had been kept together an unusually long time without reasonable opportunity for sleep, will not vitiate the verdict if it is shown that the agreement of guilty of the charge of murder was deliberate and voluntary, and not due to fatigue or exhaustion. Russell v. State, 66 Neb. 497.

The trial judge may properly in his discretion intimate to a disagreeing jury his intention to confine them until the end of the term, some ten days distant. State v. Grizzard, 89 N. C. 115.

The fact that a jury after deliberating about fifty-seven hours in a homicide case, brought in a verdict in a few hours after the court requested them to make further endeavor to reconcile their differences, does not show coercion. People v. Koerner, 117 App. Div. 40.

The fact that a jury reached a verdict of guilty in a murder case after deliberating forty-eight hours without agreeing, in a few minutes after instructions given by the trial court, was not regarded in People v. Hartung, 8 Abb. Pr. 132, as ground to impeach the verdict. This case was reversed in 22 N. Y. 95, for the reason that at the time of the conviction there was no law which authorized or sustained it.

The right of one charged with murder, cannot be said to have been prejudiced because the jury were kept together for 48 hours, and that the verdict resulted from exhaustion and the overcoming of opposition by the sheer physical and mental inability of a few to withstand the arguments and importunities of a majority of the jurors for so long a time. Jahnke v. State, 68 Neb. 154, 94 N. W. 158. In this case the jury were provided with suitable quarters, good nourishment, and were able to sleep when nature required it.

The court in Williams v. State, 69 Neb. 402, stated to the jury in a robbery case, that if an agreement can be reached within reasonable time, the court will receive the same, but warned the jury that they could not bring in a sealed verdict. The court further stated that by a reasonable time, was meant not later than ten o'clock. It was contended that these statements amounted to a coercion of the jury, in that it required them to return a verdict within the time stated, or subject themselves to the displeasure of the court, or a prolonged confinement in the jury room without an opportunity of returning a verdict when they should agree upon one. But the supreme court said that the jury will be presumed to have been composed of men of the average intelligence, acquainted with the procedure and mode of conducting trials, and to have understood the court's statement as meaning only, that the trial court was ready to receive the verdict if agreed upon at any time before the hour named, and if not, it could not be returned until the opening of court the following day.

In Territory v. McGinnis, 10 N. M. 269, the court told the jury that if they agreed upon a verdict at any time before eight o'clock the next morning, which was Sunday, the court would be there to

receive it, and that if they should not arrive at a verdict at that time, it would be necessary for them to remain together from eight o'clock Sunday until early Monday morning, as the court would be absent on Sunday. In the record it appeared that the jury heard all of the evidence in the case and the arguments of counsel on Saturday, and returned into court with a verdict on the night of that day. The supreme court said there is nothing whatever to show that the jury was influenced in its conclusion by the remarks of the trial judge.

## INDUCEMENT TO AGREEMENT.

The trial court has no right to hold out any inducement to a jury to facilitate an agreement. Parish v. State, 80 Tenn. 655.

But the promise of the trial judge to allow the jury pay for time they might not serve is not necessarily prejudicial to the rights of the defendant.

Thus it was held in Wilson v. State, 109 Tenn. 167, as not necessarily prejudicial to one on trial for murder. In this case the jury were charged early Thursday morning and retired to consider their verdict. About twelve o'clock they returned and reported no agreement, and were again sent out for further deliberations. About 4:30 p. m. the jury again came in and reported that they had not been able to agree. The court inquired if there was any chance for them to agree, to which they replied that they were nearer together than at the time they first came in. The trial judge sent them out asking them to agree that evening if they could, and saying to them, that if they could agree that evening before bedtime, to let him know and he would receive their verdict and discharge them, but that they could return to the hotel and spend the night and he would allow them pay for the next day. The jury then retired and the court immediately adjourned for the day and very soon afterwards the jury reported an agreement. The court, on appeal, said that while a promise may have influenced the jury to report earlier than they otherwise would, and possibly to agree more promptly upon their verdict, yet we are unable to see how they could have influenced them to find a verdict they otherwise would not have found.

## CALLING ATTENTION TO EXPENSE OF TRIAL.

It is regarded in some cases as improper for the court to call the attention of the jury to the expense to the county or state incident to a new trial in case of a disagreement.

Thus, a statement to the jury in a murder case, that the case is an expensive one for the county to try, and not one in which the

jury ought to disagree, was held in State v. Fisher, 23 Mont. 540, to be improper. In this case, however, the more serious error lay in the intimation that the judge believed the defendant guilty.

The instructions and admonitions given in State v. Chambers, 9 Idaho, 673, which was a forgery case, were held to be error. After the jury had deliberated for some time they returned to the court for further instructions and the court gave them some instructions and sent them back to the jury room. On the following day, they again came into court and announced that they could not agree, whereupon the court reminded them of the great expense of such a trial to the county and admonished them to meet in a proper spirit of inquiry and investigation, and try and get together and not to have too much pride in their individual opinions; that it did not seem to him that the case involved a great deal of difficulty. After remaining out for some time, they returned into court and announced that they could not agree, whereupon the court again admonished them and reiterated practically all he had said before, and told them that they should accommodate themselves to the condition of affairs and come to an agreement, as the administrations of justice demanded it. Thereafter the jury returned and brought in a verdict of guilty.

But, in Gordon v. State. (Tex. Crim. App.) 40 S. W. 445, it was held that a conviction on the charge of burglary will not be reversed because of the remarks of the trial court that it would involve a great deal of expense to the city to get a new jury, and that if they had not agreed, to return to the jury room and consider their verdict until they should agree, which they did a few minutes afterwards.

The court in returning a jury for further consideration in a larceny case, told them that the trial had occupied five days, that the testimony was lengthy, covered a good many points, had been fully discussed, and could be looked at in many different lights; that it was important to the prisoner and to the state that the case should be determined; that it had been quite expensive to the state; that that expense ought not to be thrown away, if it could be avoided; that the court had to have these considerations in mind when a jury asked to be discharged, and that the court thought the jury should have them in mind. It was claimed by the counsel for the accused that the court injected into the case the element of expense to the state as a proper matter to influence an agreement. But the court, on appeal, said that it is manifest that the judge intended merely to reconcile the jury to a return and to quicken them to a renewed effort to make true deliverance between the state and the prisoner according to the evidence and the laws, and that there was no fair

ground for supposing that they understood it otherwise. State **v.** Gorham, 67 Vt. 365.

"It may not be in good taste" said the court in Hannon v. State, 70 Wis. 446, "to call attention of the jury to the fact that the county or state will be subject to pecuniary loss if the jury fail to agree, especially in a criminal case [rape], but we cannot say that it is error." A similar view was taken in Douglass v. State, 4 Wis. 393, in which the defendant was found guilty of maintaining a nuisance.

It is not error for the trial court to say to the jury in a murder, case " This case has been a great expense to the county and ought to be decided; and while I do not ask you to yield any question of conscience, you must not be obstinate or too tenacious of your views." A verdict of guilty was reached seven or eight hours after this charge was given. Johnson v. State, 60 Ark. 45.

In People v. Miles, 143 Cal. 636, in which the defendant was charged with the crime of setting and using a set-net in the waters of the state for the purpose of catching fish, the court told the jury " That it costs several hundred dollars to get a jury together to try a criminal case. It is an expensive matter. If there is a mistrial in a criminal case the district attorney may bring it on for trial again, and a great expense attaches to the trial of such cases. . . . If you think there is any possibility of arriving at a verdict, and thus saving the expense of a retrial, I am willing to read the instructions to you again. . . . It will save a good deal of expense if this case can be finally determined by this jury; but, as I said before, I have no desire to force you to retire again to the jury-room if there is no possibility of your arriving at a verdict. . . . You are all taxpayers,—you would not be in the jury-box if you were not all on the assessment-roll of the county,—and it should be your desire more than that of any others that the county should be saved as much expense as possible." The court's statement about the expense of another trial was not regarded as a reversible error as no more was said to them than they, as taxpayers and intelligent men, must be presumed to have known without being told by the court.

In Territory v. King, 6 Dak. 131, 50 N. W. 623, the remarks of the trial court made to the jury in an assault case after they had been out twenty-eight hours without an agreement, that "I think you will be able to arrive at a verdict in this case. · The case has been twice tried at a great deal of expense to this county, and it seems to me, gentlemen, that you ought to agree on a verdict" were regarded as not requiring a reversal, although they were in some respects objectionable.

## IMPUTATIONS OF IMCOMPETENCE.

Imputations of incompetency in case of a failure to agree are viewed with disfavor.

Thus, in People v. Sheldon, 156 N. Y. 268, it was held to be error to suggest to a jury in a murder case, as a reason for agreeing, that failure to agree is " almost to confess incompetency," as personal considerations should never be permitted to influence the deliberations of the jury.

And in State v. Bybee, 17 Kan. 462, the intelligence of the jury was reflected upon in the remarks by the judge who said: " This case has occupied nearly seven weeks, and to say now at the end of all that time,—at the end of all this labor and expense,—that the question is no better off than it was when started, is almost to confess incompetency in this matter." Commenting on this remark the supreme court said that no juror should be induced to agree to a verdict by a fear that a failure to so agree would be regarded by the public as reflecting upon either his intelligence, or his integrity, and that personal considerations should never be permitted to influence his conclusions; and the thought of them should never be presented to him as a motive for action.

It was held in State v. Ladd, 10 La. Ann. 271, that there was cause for a new trial for the declaration by the judge, on the jury stating a third time that they could not agree, that he must have a verdict in the case and that he had reason to believe that the jury had been tampered with.

## COMPROMISE VERDICT.

It is improper for the court to direct a jury expressly or by implication that they may render a compromise verdict.

Thus, it is erroneous to instruct " that no number of minds could agree upon a multitude of facts, such as this case presents, without some yielding of the judgment of individuals upon the evidence, some deference to the opinions of others, without what some might call a compromise of different views." Clem v. State, 42 Ind. 420.

## INTIMATION BY JUDGE AS TO GUILT OR INNOCENCE.

Any statement by the presiding judge intimating that he believed the defendant guilty, or hinting how the jury should decide, is highly improper.

Thus, the action of the judge, in a prosecution for rape, in stating, in reply to a statement by a juror that the jurors were unable to agree, that "In view of the testimony in this case the court is clearly at a loss to know why twelve honest men cannot agree in this case." While this statement did not advise an acquittal, it was regarded as probably giving the jury to understand that the judge believed the defendant guilty, and that such should be their verdict. People v. Kindleberger, 100 Cal. 367.

A statement of the trial judge in State v. Fisher, 23 Mont. 540, made to the jury in a murder case upon being informed that there was no prospect of an agreement, clearly intimated that he believed the defendant guilty. The court said: "Feeling as I do about the matter, I do not see any reason why a jury should disagree in the matter. . . . Although I do not care to force any man against his conscience, to agree to a verdict which he does not believe in . . . feeling as I do about the case, . . . I do not feel that I should discharge you."

## CERTIFICATE OF REASONABLE DOUBT.

A certificate of reasonable doubt on a conviction of murder was granted in People v. Young, 40 Misc. 256, for the act of the trial judge in summoning the jury the next day after the case had been given them, saying to them, although they had not asked for further instructions or communicated with the court at all, that it was very unfortunate that they had not agreed, and urging them to consider the importance of the case, the length of time the trial had taken, the expense of public money, which "no one can figure or realize," the mental strain of the parties engaged in it, and the loss of the jurors' time, as reasons why they should not fail to agree. Again, two hours afterwards, the trial court sent for the jury, although they had not meanwhile asked for instructions, at which time the trial judge said: "I want to repeat to you what I said this morning, that your failure to agree results in a very great waste of public time and money, and a miscarriage of justice, in an unnecessary infliction on the defendant, and the infliction of a very large and unnecessary amount of labor on the district attorney. If there is any possibility of your agreeing, I will keep you together further. It does seem to me that this case is not one that presents a proper reason for a disagreement."

## STATEMENTS BY OFFICER IN CHARGE OF JURY.

The warning of an officer in charge of a jury in a rape case, that they would be locked up for the night unless they agreed very soon, was regarded in Brown v. State, 127 Wis. 193, as threatening and coercive, and as naturally tending to induce a surrender of their opinions. The court said that "while jurymen, in performance of the high civic function entrusted to them, ought to adhere to their deliberate and conscientious convictions notwithstanding personal inconvenience or suffering, it is not the policy of the law that rights of litigants, especially those charged with crime, shall be made dependent on the existence of such Spartan devotion to duty."

But, the suggestion of the sheriff who was present in the jury room during the deliberations of the jury in a murder case, against their return to the court and reporting a disagreement, saying that the court would not yet discharge the jury, was held in McGuire v. State, 10 Fex. Ct. App. 125, not to be ground for reversal.

So, the declaration of a bailiff who had charge of a jury in a murder case, that "unless they decided the case one way or the other they should have nothing more to eat and no water to drink," was not regarded in Pope v. State, 36 Miss. 121, as making such an impression upon the minds of the jury as would naturally influence their verdict, since it must be assumed that the jury knew that the bailiff had no authority to furnish them with food or drink of any description whatever.